[Civ. No. 22575. Third Dist. Feb. 10, 1984.]

JAMES CORNELIUS BROWN et al., Plaintiffs and Appellants, v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Defendants and Respondents.

984

**COUNSEL**

Bowley & Kmeto, Peter Kmeto and Gordon F. Bowley for Plaintiffs and Appellants.

John J. Hannegan, John S. Gilmore, Raymond M. Cadei, Diepenbrock, Wulff, Plant & Hannegan for Defendants and Respondents.

**OPINION**

**COUZENS,** ▆▆▆ ▆▆▆ Plaintiffs appeal from a judgment entered after a demurrer to the class action allegations of their first amended com-

*Assigned by the Chairperson of the Judicial Council.

plaint was sustained without leave to amend.[1] They contend the trial court erred in determining there is no reasonable possibility plaintiffs can establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact. We will affirm the judgment.

## ■ ■■■■ THE COMPLAINT[2]

The allegations of the complaint focus on both negligent and intentional factual concealment and misrepresentation regarding the level of coronary care at the University of California, Davis, Medical Center (Medical Center), and the Medical Center's failure to provide adequate coronary care. The allegations are not confined to a specific date or time period.

Plaintiffs are categorized by the complaint into 10 groups. Plaintiffs in groups "A" and "B" died as a result of complications and injuries sustained during coronary care at the Medical Center. Plaintiffs in groups "C" and "D" suffered complications and injuries from coronary care at the Medical Center. The remaining groups of plaintiffs are spouses and heirs of the four principal groups.

The complaint contains 11 causes of action. Preliminary allegations state that the class plaintiffs "are individuals who, induced by certain representations, agreed to receive coronary care and medical treatment from Defendants, and as a result, suffered injuries therefrom." The first cause of action is for intentional concealment, based on the fact defendants "suppressed and concealed material information concerning the risks associated with the receipt of coronary care rendered by the [Medical Center]." Specifically, plaintiffs allege defendants failed to disclose that the incidence of mortality and serious medical complications is eight times greater at the Medical Center than other Sacramento facilities and higher than the national average. The complaint further states that but for the suppression of this information, plaintiffs would not have been injured.

---

[1]The order sustaining the demurrer and the judgment entered thereon do not affect the individual claims of the named plaintiffs. Although an order sustaining a demurrer with or without leave to amend is not the final judgment in the case and is nonappealable, the consequence of the court's order at issue is tantamount to a dismissal of the action as to the unnamed members of the class. Under such circumstances, the order is in legal effect a final judgment from which an appeal lies. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732].)

[2]"In our examination of the complaint we are guided by the well settled principles governing the testing of its sufficiency by demurrer: A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein." (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 713.)

The second cause of action is for intentional misrepresentation. Plaintiffs contend defendants made oral and written representations regarding the quality of coronary care received at the Medical Center: that the most modern equipment was used, that patients benefit from the most advanced surgical techniques and equipment available, that patients are provided specially trained physicians and staff, that the hospital stay is made as comfortable and short as possible, and that appropriate referrals are made as needed. Plaintiffs allege that each representation was false, that plaintiffs relied on such representations and, as a consequence, they suffered damages.

The third cause of action is for battery. This cause of action is predicated on the theory that plaintiffs' consent to surgery was not "informed" by reason of the failure to disclose the "morbidity and mortality statistics resulting from elective heart surgery." If full disclosure had been made, say plaintiffs, either the surgery would not have been performed or would have been performed at another facility.

The fourth cause of action is for negligence in failing to comply with numerous government and industry standards relating to the quality of coronary care. These violations range from the failure to maintain peer review groups to failure to monitor patient care.

The balance of the causes of action represent refinements and extensions of the first four causes of action. The fifth cause of action is for negligent misrepresentation of the facts set forth in the first two causes of action. The sixth cause of action is for breach of contract. In this regard, plaintiffs allege the conduct contained in the prior five causes of action constitutes a breach of defendants' agreement to provide proper coronary care. The seventh cause of action is for breach of the implied covenant of good faith and fair dealing. Plaintiffs contend the conduct alleged in the first six causes of action contravenes the good faith duty imposed by the fiduciary relationship between the parties.

The eighth cause of action is for wrongful death. The ninth cause of action claims the conduct set forth in the first five causes of action violates the Civil Rights Act of 1871. (42 U.S.C. § 1983 et seq.) The tenth cause of action for loss of consortium is brought by the present and surviving spouses of plaintiffs in groups A through D. The eleventh cause of action is a survival action brought by Doe plaintiffs on behalf of the surviving heirs of plaintiffs in groups A and B. The action is based on the previous allegations of misconduct.

DISCUSSION

The authority for filing class actions is found in Code of Civil Procedure section 382, the relevant part of which provides: "[W]hen the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." ■ Under this section, there are two prerequisites to a proper class action: (1) there must be an ascertainable class, and (2) there must be a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These prerequisites have received extensive discussion in the opinions of the California Supreme Court in *Daar* v. *Yellow Cab Co.*, *supra*, 67 Cal.2d 695, and *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]. The two requirements are substantially intertwined. "The existence of an ascertainable class depends in turn upon a demonstrated community of interest among the purported class members in common questions of law and fact." (*Bartlett* v. *Hawaiian Village, Inc.* (1978) 87 Cal.App.3d 435, 438 [151 Cal.Rptr. 392]; *Daar* v. *Yellow Cab Co.*, *supra*, 67 Cal.2d at p. 706.)

■ Those circumstances which give rise to a sufficient community of interest vary widely in deference to the policy favoring the survival of class actions as an expeditious procedure for the resolution of certain types of litigation. (*Beckstead* v. *Superior Court* (1971) 21 Cal.App.3d 780, 783 [98 Cal.Rptr. 779].) Accordingly, interpretation of section 382 generally has broadened the perimeters of the class action such that "we are no longer fettered with rigid and unbending concepts" in determining whether such an action has been properly pleaded. (*Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688, 694 [108 Cal.Rptr. 392].) In order to establish a class action, for example, it is not necessary to have a common recovery (*Daar* v. *Yellow Cab Co.*, *supra*, 67 Cal.2d at p. 707), nor does the fact that separate transactions are involved preclude such an action (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 809). Whenever there is a "reasonable possibility" plaintiffs can plead a prima facie community of interest among class members, "the preferred course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation." (*Rose* v. *Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 154 [166 Cal.Rptr. 16]; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 813; *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 876-877 [97 Cal.Rptr. 849, 489 P.2d 1113].)

■ The right to bring a class action, however, is not unlimited. Class actions will not be permitted, for example, where there are diverse factual issues to be resolved, even though there may be many common questions

of law. "The ultimate question in every case of this type is whether, given an ascertainable class, the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225]; *Bozaich* v. *State of California, supra,* 32 Cal.App.3d at p. 695.) If the ability of each member of the class to recover clearly depends on a separate set of facts applicable only to him, then all of the policy considerations which justify class actions equally compel the dismissal of such inappropriate actions at the pleading stage. In our review of the complaint at issue, we have determined that individual issues substantially predominate over common questions.

As discussed above, the primary theories of recovery are in the first four causes of action. ■ The first and second causes of action allege plaintiffs were induced to receive coronary care at the Medical Center by certain affirmative misrepresentations or the failure to disclose certain facts. Certain elements of a fraud cause of action, in the present context, could lend themselves to a class action method of proof. The fact that a certain representation was made, for example, probably could be proved for the class by reference to defendants' publications regarding coronary care. Proof of falsity also would be common to all members of the class. Beyond these elements, however, we encounter a veritable quagmire of tough factual questions which can only be resolved by individual proof. Whether a particular class member relied on the representation, for example, will require close scrutiny of what was said between a class member and his physician. A class member's particular medical condition and method of treatment must be examined in order to determine proximate cause of any claimed damage and the actual extent of such damage. All of the foregoing involve questions of what is medically appropriate for a particular patient under his particular circumstances. Viewed in this context, the complaint raises numerous and substantial individual questions of fact such that it is not reasonably possible plaintiffs will be able to establish a sufficient community of interest to warrant class action.

Plaintiffs rely heavily on *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, in support of their right to maintain a class action for fraud. *Vasquez,* however, is readily distinguishable. There, plaintiffs had brought a class action seeking recovery for alleged misrepresentations concerning the sale of freezers and food packages. In upholding the right to maintain a class action for rescission based on consumer fraud, the court noted the misrepresentations were based on a memorized standard statement in a sales manual. Proof of falsity also was provable on a common basis, particularly in view of the standardized nature of the contracts at issue. Finally, the court held

it was permissible to infer justifiable reliance on defendant's misrepresentations if the reasonable man would have so relied. Individual proof of reliance by each member of the class, therefore, was not required. (*Id.*, at pp. 814-815.) What may be appropriate to a determination of common issues in a relatively simple consumer fraud action, however, is entirely inappropriate when the alleged fraud relates to the decision to obtain heart surgery. Rather than dealing with straightforward issues such as the price of meat and life-expectancy of freezers, the court must grapple with complex issues relating to a patient's medical condition prior to surgery, the need for medical care and the extent of such care required by his condition, the variable nature of the dialogue between physician and patient, the surgical process itself, and postsurgical complications and care.

Damage issues compound the problem. Although the court in *Vasquez* permitted individual proof of damage by each member of the class, the total amount of damages claimed by any one plaintiff was $7,700, of which $5,000 was for punitive damages. Compensatory damages in excess of $15,000 are claimed by each plaintiff in the present case, together with punitive damages of $500 million. Even if we were to ignore the problems relative to common proof of reliance as previously discussed, the complexity of the damage question alone, fully litigated by each class member, would far outweigh any small benefit derived from those issues which could be tried on a common basis.

■ The third cause of action for battery is equally unsuited to class action. Basic to the concept of an informed consent is communication between doctor and patient. Concepts of implied reliance based on the reasonable man, as discussed in *Vasquez,* have no validity when plaintiff puts into issue the exact communication between hospital and patient. Some of the difficulties in pursuing a class action for lack of informed consent are highlighted in *Harrigan* v. *United States* (E.D.Pa. 1974) 63 F.R.D. 402, 405: "The thrust of plaintiff's complaint is that the Veterans Administration failed to obtain the informed consent of the members of the purported class prior to surgery and that such surgery was negligently performed. The concept of informed consent is a complex one involving such issues as what information was supplied to each patient, what the emotional condition of each patient was, what each patient's understanding of the information conveyed was, and whether there was a necessity of dispensing with the requirement of informed consent due to emergency conditions. A determination of informed consent in each case depends on a separate inquiry into the facts surrounding each operation and an application of the facts to the governing legal principles."

We find the *Harrigan* reasoning persuasive. ■ The extent of a physician's duty to disclose is directly controlled by the unique situation of each

patient. The physician must disclose all information "[he] knows or should know would be regarded as significant by a reasonable person in the patient's position when deciding to accept or reject the recommended medical procedure. [Citations.] . . . If the physician knows or should know of a patient's unique concerns or lack of familiarity with medical procedures, this may expand the scope of required disclosure. [Citation.]" (*Truman* v. *Thomas* (1980) 27 Cal.3d 285, 291 [165 Cal.Rptr. 308, 611 P.2d 902].) Since this duty will necessarily vary from case to case, we determine that individual issues will predominate over common questions.

■ The fourth cause of action alleges defendants were negligent in the manner of providing coronary care. While the regulations and standards alleged to have been violated are general enough to apply to any patient, the proof of the fact of the actual violations and resulting damages raise substantial individual questions. ■ "In general, mass tort actions for personal injuries are not appropriate for class-action treatment . . . in that the major elements in tort actions for personal injuries—liability, causation, and damages—may vary widely from claim to claim. Reluctance to extend class-action treatment to mass torts governs even those types of claims which necessarily contain common questions of law and fact." (*Rose* v. *Medtronics, Inc., supra,* 107 Cal.App.3d at p. 155.)

The failure of plaintiffs to establish a sufficient community of interest as to the first four causes of action necessarily extends to the remaining causes of action. We conclude, therefore, that the demurrer was properly sustained without leave to amend as to all unnamed class plaintiffs.

The judgment (order) is affirmed.

Regan, Acting P. J., and Evans, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 18, 1984.