[No. A043529. First Dist., Div. Three. June 29, 1990.]

ROBERT CLAUSING, an Incompetent Person, etc., et al., Plaintiffs and Appellants, v.
SAN FRANCISCO UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

**COUNSEL**

Edna C. Espanol for Plaintiffs and Appellants.

Louise H. Renne, City Attorney, Kimberly A. Reiley and Donna M. Vargas, Deputy City Attorneys, for Defendants and Respondents.

**OPINION**

**MERRILL, J.**—Robert Clausing, Brian Clausing as guardian ad litem for Robert Clausing, and Betty Simmerman (the mother of Robert) appeal from an order sustaining a demurrer without leave to amend to the class action allegations and to the cause of action for breach of mandatory duty under Government Code section 815.6 in their third amended complaint against respondents San Francisco Unified School District (the District), San Francisco Board of Education, Louise Lombard School, Joan Michaels, and Henry A. Caruso. Appellants also appeal from a discovery order denying their motion to compel production of documents and for monetary sanctions. We affirm the orders.

## I. *Procedural Background*

Appellants filed their initial complaint on September 17, 1987. The complaint alleged, inter alia, that from September through November 1986,

appellant Robert Clausing was a 20-year-old physically handicapped and mentally retarded student at a special school for the handicapped in a class taught by respondent Joan Michaels at respondent Louise Lombard School; that during that time, respondent Michaels repeatedly subjected appellant Robert Clausing to physical, psychological, and verbal abuse, beatings, and public humiliation; that as a result appellant Robert Clausing suffered severe physical, mental, emotional, and psychological injury and damages; and that the respondent District authorized or failed to prevent the physical, mental, emotional, and psychological abuse inflicted by teachers and other employees on appellant Robert Clausing and other students similarly situated. The complaint sought damages and "such equitable, legal or injunctive relief as the court may deem appropriate" on behalf of appellants and of a purported class of "all persons similarly situated" under various causes of action for assault and battery, intentional and negligent infliction of emotional distress, and negligence.

On October 27, 1987, appellants filed a first amended complaint alleging the same causes of action as in the original complaint. Appellants filed a second amended complaint on November 24, 1987. This second amended complaint added a fifth cause of action alleging failure to discharge a mandatory duty under Government Code section 815.6, a sixth cause of action for bad faith breach of contract, and a seventh cause of action for breach of fiduciary duty.

Respondents demurred to the second amended complaint (the first demurrer), and a hearing on this demurrer was held on February 19, 1988. At the hearing, the trial court clearly indicated that it was not yet prepared to address the merits of the issue of class certification, but preferred to determine what causes of action in the complaint would withstand demurrer. On April 11, 1988, the trial court issued an order that, among other things, sustained the demurrer as to the fifth cause of action (mandatory duty) with leave to amend, and denied the demurrer as to the class action "without prejudice."[1]

On May 17, 1988, appellants filed a third amended complaint that expanded the allegations in their fifth cause of action (mandatory duty) with the inclusion of more alleged violations of statutory and constitutional provisions; added a new sixth cause of action alleging deprivation of civil

---

[1] The trial court's order stated in part as follows: "[Respondents'] demurrer to the second amended complaint's fifth cause of action is sustained with 30 days leave to amend. None of the statutes set forth in [appellants'] fifth cause of action impose a mandatory duty on defendants pursuant to Government Code section 815.6. [Appellants] may amend this cause of action to allege an appropriate statute imposing a mandatory duty pursuant to Government Code section 815.6."

rights under 42 United States Code section 1983; and deleted the former cause of action for breach of contract. On June 16, 1988, respondents filed a demurrer to the third amended complaint (the second demurrer). Respondents' second demurrer continued the same arguments regarding appellants' fifth cause of action that had been made in the first demurrer, and also repeated the same arguments challenging the class action allegations.

On July 18, the trial court heard oral argument on the second demurrer. Appellants objected that the trial court had previously overruled respondents' demurrer to the class action allegations. The trial court responded that the demurrer had been denied without prejudice because it had not been considered on the merits; and it went on to sustain the second demurrer as to all class action allegations and as to the fifth cause of action without leave to amend.[2]

Paralleling the procedural history of the amended complaints and demurrers is that of the discovery proceedings. Appellants served a demand for production and inspection of documents on respondent District on December 11, 1987. Negotiations between the parties as to the time, place, and manner of document production were unsuccessful, and on January 25, 1988, appellants moved to compel production, and for sanctions. On February 8, 1988, respondents filed opposition to the motion to compel, together with a motion for a protective order alleging that immediate production of the documents sought was unduly burdensome and oppressive, and would violate the privacy rights of school students in the District.

Over the next few months, there were several hearings on the discovery disputes between the parties. On July 6, 1988, the discovery commissioner clarified the fact that the only documents which remained unproduced consisted of records of prior complaints of physical or emotional abuse of students by teachers within the previous 10 years. Because these documents were primarily relevant to the class action, the discovery commissioner granted respondents' motion to continue the discovery matters until after the trial court had ruled on respondents' demurrers.

After the trial court sustained respondents' demurrer to the class action without leave to amend, the discovery motions were again heard by the commissioner, who denied appellants' motions to compel and for sanctions on the grounds of the extreme sensitivity of the subject matter sought to be produced, the privacy concerns at issue, and the fact that the trial court's sustaining of the demurrer to the class action without leave to amend had largely mooted the need for the documents.

---

[2] Apparently the balance of appellants' third amended complaint alleging various causes of action against respondents remains viable at this stage of the ongoing litigation.

## II. *Demurrer to Class Action*

Appellants' initial contention is that the trial court abused its discretion in sustaining respondents' second demurrer to the class action allegations. There is no merit to this contention.

### A.

■ Contrary to appellants' position, respondents were not obliged to comply with Code of Civil Procedure section 1008, subdivision (b), in bringing their second demurrer.[3] That statute, which provides that any subsequent application for an order which was previously refused must be supported by an affidavit setting forth particulars concerning the initial motion and stating the new or different state of facts claimed to exist, is simply not relevant under the facts of this case. Respondents' second demurrer was an appropriate responsive pleading to a new complaint. (*Billings* v. *Rexford Park Apts.* (1966) 244 Cal.App.2d 317, 320 [52 Cal.Rptr. 914].)

Furthermore, even though the class action allegations in the complaint had not changed since respondents' first demurrer to them had been denied, that denial was expressly made "without prejudice" to its renewal. It is clear from the record that the trial court at the hearing on the first demurrer on February 19, 1988, was not considering the merits of the class certification issue. The trial court properly concluded at the time of the second demurrer that the denial "without prejudice" was intended to permit a subsequent renewal of the same demurrer. (*Chambreau* v. *Coughlan* (1968) 263 Cal.App.2d 712, 717-718 [69 Cal.Rptr. 783].)

There is no support for appellants' contention that the trial court was without authority to consider the second demurrer. To the contrary, it is well within the discretionary power of a court hearing and denying a motion to grant leave for its renewal, whether or not there has been compliance with Code of Civil Procedure section 1008. (*Josephson* v. *Superior Court* (1963) 219 Cal.App.2d 354, 358 [33 Cal.Rptr. 196].)

---

[3] Code of Civil Procedure section 1008, subdivision (b), provides: "(b) When the party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, makes a subsequent application for the same order upon an alleged different state of facts, it shall be shown by affidavit what application was made before, when and to what judge, what order or decision was made thereon, and what new facts are claimed to be shown. For a failure to comply with this requirement, any order made on such subsequent application may be revoked or set aside on ex parte motion."

## B.

█ Although the general rule is that it is an abuse of discretion to sustain a demurrer without leave to amend unless the complaint shows that it is incapable of amendment, "it is also true that where the nature of plaintiff's claim is clear, but under substantive law no liability exists, leave to amend should be denied, for no amendment could change the result. [Citations.]" (*Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 942-943 [143 Cal.Rptr. 255]; see *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 876 [97 Cal.Rptr. 849, 489 P.2d 1113].) █ Here, the record supports the trial court's determination that there was no reasonable possibility that appellants would be able to allege facts sufficient to cure their defective class action allegations.

The authority for filing class actions is found in Code of Civil Procedure section 382, which provides that "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." █ In interpreting this provision, the courts have stated that there are two prerequisites for a valid class action: (1) an ascertainable class; and (2) a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. (*Brown* v. *Regents of University of California* (1984) 151 Cal.App.3d 982, 988 [198 Cal.Rptr. 916].) These two requirements are clearly intertwined. " 'The existence of an ascertainable class depends in turn upon a demonstrated community of interest among the purported class members in common questions of law and fact.' [Citations.]" (*Ibid.*)

█ In accordance with these principles, it has been held that class actions will not be permitted where there are diverse factual issues to be resolved, despite the existence of common questions of law. "The ultimate question in every case of this type is whether, given an ascertainable class, the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225].) "If the ability of each member of the class to recover clearly depends on a separate set of facts applicable only to him [or her], then all of the policy considerations which justify class actions equally compel the dismissal of such inappropriate actions at the pleading stage." (*Brown* v. *Regents of University of California, supra*, 151 Cal.App.3d at p. 989.)

█ In the complaint in this case, individual issues substantially predominate over common factual questions. Indeed, the separate issues to be

adjudicated in this mass-tort action are overwhelmingly numerous and substantial when compared to the few issues which are common to the class. In order to recover, each individual claimant would have to prove: (1) the fact that he or she was a victim of abuse; (2) the identity of the abuser; (3) the capacity in which the alleged abuser acted; (4) the fact that the alleged perpetrator was acting within the scope of his or her employment by the District; and (5) the existence and extent of damages. In each individual instance, the District and the individuals involved would be entitled to different affirmative defenses and immunities. Even if it could be determined that the policies and practices of the District encouraged or permitted physical and mental abuse of students in the asserted class, this determination could not resolve the lawsuit, which would still require a full trial on each and every alleged incident of abuse with respect to fault, causation, damages, and affirmative defenses.

The instant case is precisely the kind of mass-tort lawsuit which courts have found not amenable to class certification. (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1123 [245 Cal.Rptr. 658, 751 P.2d 923]; *Brown* v. *Regents of University of California, supra*, 151 Cal.App.3d at pp. 988-991.) In these kinds of cases, the wide disparity in individual claimants' damages and the diverse issues of liability and causation as to each individual claimant preclude maintenance of the suit as a class action. Here, appellants do not allege that all members of the purported class were injured by the same person, in the course of the same incident, or even at the same school. The different factual circumstances which would have to be tried are therefore legion.

Appellants urge that an evidentiary hearing was required to determine the issue of whether or not the alleged class should be certified. To the contrary, courts have routinely decided the issue of class certification on demurrer, sustaining demurrers without leave to amend where it is clear that there is no reasonable possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact. (*Brown* v. *Regents of University of California, supra,* 151 Cal.App.3d at pp. 985-986; *Phillips* v. *Crocker-Citizens Nat. Bank* (1974) 38 Cal.App.3d 901, 909-910 [113 Cal.Rptr. 688].) Where a complaint, on its face, fails to allege facts sufficient to establish a community of interest as to the elements of the class claims, it would be a waste of time and judicial resources to require a full evidentiary hearing when the matter can properly be disposed of by demurrer. It was not error for the trial court to dispose of this issue in that way.

III. *Demurrer to Action for Breach of Mandatory Duty*

Appellant next argues that the trial court abused its discretion in sustaining respondents' demurrer to appellants' fifth cause of action, which alleged

that the respondents had breached mandatory duties owed to students under California Constitution, article I, sections 1 and 28, subdivision (c), and Government Code section 815.6. Again, we disagree.

## A.

The relief sought in the fifth cause of action of appellants' third amended complaint embraced a bewildering variety of alleged statutory and constitutional grounds. The trial court's order from which appellants appeal sustained respondents' demurrer to this cause of action in its entirety. Appellants now raise on appeal only a few of the statutory and constitutional provisions on which they had based this purported cause of action.[4] We first address appellants' contention that the actions of the District violated their *constitutional* rights, and that the trial court abused its discretion in sustaining respondents' demurrer to the fifth cause of action on this ground.

In "Count One" of their fifth cause of action, appellants allege that respondents breached their "duty to secure to the [appellants] their inalienable right to attend campuses which are safe, secure and peaceful as mandated by Article I, Section 28 of the California Constitution." Appellants are relying on a broad interpretation of the safe schools provision of the California Constitution, adopted by initiative as part of "The Victims' Bill of Rights." This provision states: *"Right to Safe Schools.* All students and

---

[4] Appellants' fifth cause of action is divided into two "counts." "Count One" alleges that respondents "were obligated by statutory, constitutional and regulatory enactments of the State and Federal Governments to protect [appellants] . . . from the . . . harm and injury suffered by them, and such failure to discharge their mandatory duties proximately caused such injuries . . . ." Among the "mandatory enactments" allegedly imposing "a duty on [respondents] to protect [appellants] from the injury suffered," appellants list the following: California Constitution, article I, sections 1 and 28; Education Code sections 32261 et seq., 44030, 44429, 44806, 44807, 49000, 49001, and 56000 et seq. (apparently incorrectly cited by appellants as § 5600 et seq.); Government Code section 835; Penal Code sections 241.2, 243.2, 243.4, 273a and 273d (apparently incorrectly cited by appellants as §§ 273(a) and 273(d)), 363, 368, 628, 11165.2 through 11165.6, and 11166 et seq.; Welfare and Institutions Code sections 4500 et seq., 4502, 5004, 6500 et seq., and 15601 et seq.; California Code of Regulations, title 5, section 3000 et seq.; 20 United States Code section 1400 et seq.; 28 United States Code section 1654; 29 United States Code section 794 et seq.; 42 United States Code sections 1983, 6009 (apparently incorrectly cited by appellants as § 6010); and 34 Code of Federal Regulations, sections 300.13 and 300.121 et seq.

"Count Two" of the fifth cause of action is more specifically based on Government Code section 815.6. It alleges that pursuant to that statute, respondents were subjected to civil liability by their failure to carry out their "mandatory duties" under various statutory and constitutional enactments to protect appellants from the alleged injuries suffered by them. Of the lengthy list of enactments enumerated in this cause of action, appellants now raise on appeal only California Constitution, article I, sections 1 and 28, subdivision (c); Education Code sections 49000 and 49001; Government Code section 815.6; and 42 United States Code section 1983.

staff of public primary, elementary, junior high and senior high schools have the inalienable right to attend campuses which are safe, secure and peaceful." (Cal. Const., art. I, § 28, subd. (c) (hereafter section 28, subdivision (c)).)

The Victims' Bill of Rights, enacted by voter initiative as Proposition 8, is expressly concerned with strengthening the *criminal justice system* by reforming "the procedural treatment of accused persons and the disposition and sentencing of convicted persons," in order to fully protect the rights of crime victims. (Cal. Const., art. I, § 28, subd. (a).) In *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236 [186 Cal.Rptr. 30, 651 P.2d 274], the Supreme Court held that Proposition 8 did not violate the single subject requirement of article II, section 8, subdivision (d), of the state Constitution because *all* of the sections of the enactment "were designed to strengthen procedural and substantive safeguards for victims in our criminal justice system." (*Brosnahan* v. *Brown, supra*, 32 Cal.3d at p. 247.) The court specifically rejected the contention that the safe schools provision concerned subject matter isolated from the criminal justice system. (*Id.*, at pp. 247-248; see also *Harbor* v. *Deukmejian* (1987) 43 Cal.3d 1078, 1099 [240 Cal.Rptr. 569, 742 P.2d 1290].) Thus, section 28, subdivision (c), like the rest of the Victims' Bill of Rights, has as its goal public safety, which is to be achieved through "broad reforms" in criminal law and procedure. (Cal. Const., art. I, § 28, subd. (a); *Leger* v. *Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1456 [249 Cal.Rptr. 688].)

Under article I, section 26, of the California Constitution, all provisions of the state Constitution "are mandatory and prohibitory, unless by express words they are declared to be otherwise." ■ Unquestionably, section 28, subdivision (c), is mandatory. Thus, all agencies of government are required to comply with it, and are prohibited from taking official actions which violate it or contravene its provisions. (*Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 493, fn. 17 [159 Cal.Rptr. 494, 601 P.2d 1030]; *Bauer-Schweitzer Malting Co.* v. *City and County of San Francisco* (1973) 8 Cal.3d 942, 946 [106 Cal.Rptr. 643, 506 P.2d 1019]; *Leger* v. *Stockton Unified School Dist., supra*, 202 Cal.App.3d at p. 1454.)

■ ■ ■ ■ ■ However, it is an entirely different matter to conclude that section 28, subdivision (c), is self-executing in the sense that it establishes an affirmative duty to act on the part of school districts, provides remedies for its violation, or creates a private cause of action for damages.[5]

---

[5] "A provision may be mandatory without being self-executing. It is self-executing if no legislation is necessary to give effect to it, and if there is nothing to be done by the Legislature to put it into operation. A constitutional provision contemplating and requiring legislation is not self-executing. [Citation.] In other words, it must be regarded as self-executing if the na-

"The following rule has been consistently applied in California to determine whether a constitutional provision is self-executing in the sense of providing a specific method for its enforcement: ' "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." ' [Citations.]" (*Leger* v. *Stockton Unified School Dist.*, *supra*, 202 Cal.App.3d at p. 1455.)

As stated in the recent opinion of the Court of Appeal, Third Appellate District, in *Leger* v. *Stockton Unified School Dist.*, *supra*, 202 Cal.App.3d 1448, with which we are in agreement, "section 28(c) declares a general right without specifying *any* rules for its enforcement. It imposes no express duty on anyone to make schools safe. It is wholly devoid of guidelines, mechanisms, or procedures from which a damages remedy could be inferred. Rather, ' "it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." ' [Citation.]" (*Id.*, at p. 1455, fn. omitted.) There is nothing in the legislative history of section 28, subdivision (c), to suggest that it was intended to create a civil action for damages or an affirmative duty to insure that schools are free from all risk of crime and violence. The right proclaimed in section 28, subdivision (c), although inalienable and mandatory, simply establishes the parameters of the principle enunciated; the specific means by which it is to be achieved for the people of California are left to the Legislature.[6]

Thus, we conclude that section 28, subdivision (c), is not self-executing, in the sense that it does not provide an independent basis for a private right of action for damages. Neither does it impose an express affirmative duty on

ture and extent of the right conferred and the liability imposed are fixed by the Constitution itself, so that they can be determined by an examination and construction of its terms and there is no language indicating that the subject is referred to the Legislature for action [citation]; and such provisions are inoperative in cases where the object to be accomplished is made to depend in whole or in part on subsequent legislation." (*Taylor* v. *Madigan* (1975) 53 Cal.App.3d 943, 951 [126 Cal.Rptr. 376].)

[6] In this respect section 28, subdivision (c), is closely analogous to article I, section 1, of the California Constitution, which states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Clearly, although safety and happiness are inalienable rights, this provision of the Constitution does not establish the means whereby they may be enjoyed. No case has ever held that this provision enunciating the inalienable right to obtain safety and happiness is self-executing in the sense that it gives rise, in and of itself, to a private right of action for damages or an affirmative duty on the part of the state to take particular steps to guarantee the enjoyment of safety or happiness by all citizens. (*Langdon* v. *Sayre* (1946) 74 Cal.App.2d 41, 44 [168 P.2d 57]; cf. *In re Underwood* (1973) 9 Cal.3d 345, 348 [107 Cal.Rptr. 401, 508 P.2d 721].)

any government agency to guarantee the safety of schools. (*Leger* v. *Stockton Unified School Dist., supra,* 202 Cal.App.3d at pp. 1453-1457; *Halliman* v. *Los Angeles Unified School Dist.* (1984) 163 Cal.App.3d 46, 52 [209 Cal.Rptr. 175].)

## B.

■ Appellants also contend that the trial court abused its discretion in sustaining the demurrer to their contention, made as part of the fifth cause of action of their third amended complaint, that California Constitution, article I, section 1, prohibited respondents from carrying out a "policy" which allegedly authorized teachers in the District to humiliate students by depriving them of their right of privacy.

It is true that the constitutional provision protecting the right of privacy (Cal. Const., art. I, § 1) *is* self-executing and supports a cause of action for an injunction. (*White* v. *Davis* (1975) 13 Cal.3d 757, 775-776 [120 Cal.Rptr. 94, 533 P.2d 222].) The difficulty is that appellants are not simply seeking injunctive relief in this cause of action. They are seeking to establish that respondents have a mandatory, affirmative duty to protect and defend the right of privacy; they ask for damages as well as equitable relief. Although citizens have a private cause of action against public entities for violation of the right to privacy, no case has ever held that California Constitution, article I, section 1, imposes a *mandatory duty* on public entities to protect a citizen's right to privacy. The constitutional mandate is simply that the government is *prohibited* from *violating* the right; if it does, an aggrieved citizen may seek an injunctive remedy in court. (*White* v. *Davis, supra,* 13 Cal.3d at pp. 775-776.) Thus, there was no error in sustaining the demurrer to the fifth cause of action on this ground.

## C.

■ We turn to appellants' contention that the trial court erred in sustaining the demurrer as to their allegations that respondents violated mandatory duties under Government Code section 815.6. That statute provides as follows: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Appellants contend that they have stated a cause of action under this statute by alleging that respondents had breached mandatory duties owed to them under various enactments, including Education Code sections 49000

and 49001, 42 United States Code section 1983, and California Constitution, article I, sections 1 and 28, subdivision (c).

In its comment on Government Code section 815.6, the Law Revision Commission states: "This section declares the familiar rule, applicable to both public entities and private persons, that failure to comply with applicable statutory or regulatory standards is negligence unless reasonable diligence has been exercised in an effort to comply with those standards. [Citations.] [¶] In the sections that follow in this division, there are stated some immunities from this general rule of liability. See, for example, [Gov. Code] Section 818.2." (See Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1980 ed.) § 815.6, p. 205, Deering's Ann. Gov. Code, § 815.6, p. 157.) Government Code section 818.2, in turn, provides: "A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."[7]

 In order for Government Code section 815.6 to be applicable, the enactment relied upon must impose a *mandatory* duty, not a discretionary duty; neither must the enactment simply set forth a prohibition or a right, as opposed to an affirmative duty on the part of a government agency to perform some *act*. (*Tirpak* v. *Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639, 642-646 [232 Cal.Rptr. 61].) In every case, "[t]he controlling question is whether the enactment at issue was intended to impose an obligatory duty to take specified official action to prevent particular foreseeable injuries, thereby providing an appropriate basis for civil liability. [Citation.]" (*Keech* v. *Berkeley Unified School Dist.* (1984) 162 Cal.App.3d 464, 470 [210 Cal.Rptr. 7].) The question of whether an enactment is intended to impose a mandatory duty on a public entity to protect against a particular kind of injury is a question of law. (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 906-911 [136 Cal.Rptr. 251, 559 P.2d 606]; *Tirpak* v. *Los Angeles Unified School Dist., supra*, 187 Cal.App.3d at p. 642.) In our opinion, none of the statutory or constitutional provisions cited by appellants create the kind of affirmative, mandatory duty to which Government Code section 815.6 applies.

Thus, Education Code sections 49000 and 49001, as enacted in 1986 (Stats. 1986, ch. 1069, §§ 1-4, pp. 3749-3750), prohibit corporal punishment

---

[7]The Law Revision Commission Comment to this section states as follows: "This section would be unnecessary except for a possible implication that might arise from Section 815.6, which imposes liability upon public entities for failure to exercise reasonable diligence to comply with a mandatory duty imposed by an enactment. This section recognizes that the wisdom of legislative or quasi-legislative action, and the discretion of law enforcement officers in carrying out their duties, should not be subject to review in tort suits for damages if political responsibility for these decisions is to be retained." (See Cal. Law Revision Com. com., 32 West's Ann. Gov. Code, *supra*, § 818.2, p. 211, Deering's Ann. Gov. Code, § 818.2, pp. 164-165.)

in the public schools of this state.[8] These statutes are clearly prohibitory in effect; they set forth an express statutory prohibition on certain conduct, with certain enumerated exceptions. Although they may establish important rights and confer significant benefits on members of the public (cf. *Slayton* v. *Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, 550-553 [207 Cal.Rptr. 705]), they do *not* create any mandatory, affirmative duty on the part of public schools and school districts to take action or carry out measures to ensure that students are never subjected to corporal punishment by teachers. The statutes set forth no guidelines or rules for schools to follow in implementing an affirmative duty to prevent corporal punishment. If rules and guidelines for the implementation of an alleged mandatory duty are not set forth in an otherwise prohibitory statute, it cannot create a mandatory duty. (Cf. *Nunn* v. *State of California* (1984) 35 Cal.3d 616, 624-626 [200 Cal.Rptr. 440, 677 P.2d 846].)

 Appellants' interpretation of these statutes would transform any and all statutes setting forth prohibitions on certain conduct into mandatory injunctions on individuals or entities requiring them to take affirmative action to protect other members of the public from the kinds of harm which the statutes seek to prevent through prohibition. The potential ramifications to society and the legal system itself of such an interpretation, in terms of exposure to civil liability and damages, would be great and enormously costly. In our opinion, it was for this reason that the Legislature enacted Government Code section 818.2, specifically providing that a public entity is *not liable* for injuries caused "by failing to enforce any law." In short, the provisions of Government Code section 815.6 are not applicable to Education Code sections 49000 and 49001.

---

[8] Education Code section 49000 provides: "The Legislature finds and declares that the protection against corporal punishment, which extends to other citizens in other walks of life, should include children while they are under the control of the public schools. Children of school age are at the most vulnerable and impressionable period of their lives and it is wholly reasonable that the safeguards to the integrity and sanctity of their bodies should be, at this tender age, at least equal to that afforded to other citizens."

Education Code section 49001 provides: "(a) For the purposes of this section 'corporal punishment' means the willful infliction of, or willfully causing the infliction of, physical pain on a pupil. An amount of force that is reasonable and necessary for a person employed by or engaged in a public school to quell a disturbance threatening physical injury to persons or damage to property, for purposes of self-defense, or to obtain possession of weapons or other dangerous objects within the control of the pupil, is not and shall not be construed to be corporal punishment within the meaning and intent of this section. Physical pain or discomfort caused by athletic competition or other such recreational activity, voluntarily engaged in by the pupil, is not and shall not be construed to be corporal punishment within the meaning and intent of this section.

"(b) No person employed by or engaged in a public school shall inflict, or cause to be inflicted corporal punishment upon a pupil. Every resolution, bylaw, rule, ordinance, or other act or authority permitting or authorizing the infliction of corporal punishment upon a pupil attending a public school is void and unenforceable."

Neither does 42 United States Code section 1983 create a mandatory duty under Government Code section 815.6. This federal statute does not create any substantive rights; it simply provides a private remedy when federal constitutional rights are violated. Indeed, appellants have stated a cause of action for violation of their federal constitutional rights, as set forth in the sixth cause of action of their third amended complaint. But they have no grounds for asserting in addition that this federal statute creates a mandatory duty on the basis of which they may seek damages under Government Code section 815.6.

Appellants also assert that California Constitution, article I, sections 1 and 28, subdivision (c), provide a basis for liability under Government Code section 815.6. We disagree. As discussed, these provisions are simply declarations of rights, imposing no mandatory duties upon respondents affirmatively to ensure or to guarantee the protection of the particular stated rights to safe schools and privacy. They fail to supply the necessary rules for implementation of the rights they set forth. There are no grounds for appellants' position that they may claim liability for breach of mandatory duty thereunder. (*Nunn* v. *State of California, supra*, 35 Cal.3d at pp. 624-626; *Leger* v. *Stockton Unified School Dist., supra*, 202 Cal.App.3d at p. 1455, fn. 1.)

## IV. *Discovery Order*

Finally, appellants urge that the trial court abused its discretion in denying their motions to compel production of documents and their requests for sanctions with respect to discovery. This contention is without merit.

Discovery orders are not directly appealable. (Code Civ. Proc., §§ 904.1, 906; *Southern Pacific Co.* v. *Oppenheimer* (1960) 54 Cal.2d 784, 786 [8 Cal.Rptr. 657, 356 P.2d 441]; *Schulz* v. *Superior Court* (1977) 66 Cal.App.3d 440, 443 [136 Cal.Rptr. 67].) Even if we were to treat appellants' request for review as a petition for a writ, the discovery order must be affirmed. It is clear from the record that the documents sought to be produced are relevant only to appellants' class action allegations, as to which respondents' demurrer was properly sustained without leave to amend prior to the issuance of the discovery order at issue. Their production is therefore largely moot. To the extent the documents may have been relevant to appellants' individual claims, we agree with the ruling of the court below that the privacy interests of the students involved outweighed appellants' need for these documents. There was no error.

## V. *Conclusion*

The judgment is affirmed.

White, P. J., and Strankman, J., concurred.

A petition for a rehearing was denied July 30, 1990, and appellants' petition for review by the Supreme Court was denied September 20, 1990.