TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 98-211 |
| of | : | March 1, 1999 |
| BILL LOCKYER<br>Attorney General | : |  |
| CLAYTON P. ROCHE<br>Deputy Attorney General | : |  |

THE HONORABLE WESLEY CHESBRO, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following questions:

1.  Does a school district have a duty to disclose information received from a law enforcement official concerning the presence of a sex offender in its community?

2.  Does a school district have a duty to disclose information received from a parent or employee concerning the presence of a sex offender in its community?

3.  Does a school district have a duty to review CD-ROM information when it has notice of the presence of a sex offender in its community?

4.  May a school district disclose information it has received from a law enforcement official concerning the presence of a sex offender in its community?

5.      May a school official be subject to sanctions when information relating to a sex offender is improperly used or improperly disclosed?

CONCLUSIONS

1.      A school district does not have a mandatory duty but may disclose information received from a law enforcement official concerning the presence of a sex offender in its community if the information is disclosed in the manner and to the extent authorized by the law enforcement agency.

2.      A school district does not have a mandatory duty but may disclose information received from a parent or employee concerning the presence of a sex offender in its community; however, the district will not have immunity for disclosing information that was not obtained from a law enforcement agency.

3.      A school district does not have a mandatory duty but may review CD-ROM information when it has notice of the presence of a sex offender in its community.

4.      A school district may disclose information it has received from a law enforcement official concerning the presence of a sex offender in its community to protect students at risk if the dissemination is made in the manner and to the extent authorized by the law enforcement agency.

5.      A school official may be subject to sanctions when information relating to a sex offender is improperly used or improperly disclosed.

ANALYSIS

California's version of what is commonly known as Megan's Law[1] is contained in sections 290 and 290.4 of the Penal Code.[2] Essentially, section 290 requires persons who have been convicted of specified sex offenses and are no longer incarcerated to be registered

---

[1] Following public reaction to the abduction, rape, and murder of seven-year-old Megan Kanka in 1994, New Jersey enacted the Registration and Notification of Release of Certain Offenders Act, commonly known as "Megan's Law." The man who later confessed to Megan's murder in New Jersey lived across the street from the Kanka family and, unknown to the community, had twice been convicted of sex offenses involving young girls. An additional 48 states have followed New Jersey in adopting a form of Megan's Law.

[2] All section references herein are to the Penal Code unless otherwise noted.

with the appropriate law enforcement agency where he or she resides or is located.

When a peace officer "reasonably suspects" that a child or other person may be "at risk" from a sex offender, a law enforcement agency may release detailed information it deems relevant and necessary to persons, agencies, or organizations the offender is "likely to encounter." These include "[p]ublic and private educational institutions, day care establishments" and "[o]ther community members at risk." (§ 290, subd. (m)(1).)

Besides the registration and disclosure provisions of section 290, additional protection is provided to the public under the terms of section 290.4. Pursuant to the latter statute, the Department of Justice ("Department") must continually compile information concerning individuals required to register under section 290 and operate a "900" telephone number that interested parties may call to inquire if a named individual is listed in its compilation. The Department is also to provide a CD-ROM or similar electronic medium containing the sex offenders' registration information to sheriffs' departments and to municipal police departments in cities with a population of more than 200,000. The Department and local law enforcement agencies are to make the CD-ROM or other electronic information available to the public for viewing with the understanding that "the release of the information is to allow members of the public to protect themselves and their children from sex offenders," and is not obtained to discriminate against or harass any registrant. (§ 290.4, subd. (a)(4)(A).)

We are asked five questions concerning the responsibilities of school districts under the terms of California's version of Megan's Law.

## 1.    Duty To Disclose Information Received From Law Enforcement Officials

The first question presented is whether a school district has a duty to disclose information concerning registered sex offenders which it has received from law enforcement officials. We conclude that no mandatory duty exists but that a school district may disclose such information in the manner and to the extent authorized by the law enforcement agency (§ 290, subds. (m)(3), (n)(4)), and if it does so in good faith, it is immune from civil liability (§ 290, subd. (p)(2)).

Looking initially at sections 290 and 290.4, we find that disclosure of information by law enforcement officials to agencies such as school districts is "to allow members of the public to protect themselves and their children from sex offenders." (§ 290, subd. (m)(5).) Section 290 does not mandate school districts to take any action with respect to sex offender information provided to them by a law enforcement agency. The statute is silent in this respect; no statutory duty to disclose is imposed upon school districts.

If a school district believes it advisable to inform those "at risk" of a particular sex offender's presence in the community, it may do so. The law contemplates that school officials will work with law enforcement officials regarding the manner and extent of disseminating relevant information. However, such decision would be within the sound discretion of school district officials.

Looking at other provisions of law, we note that article 1, section 28, subdivision (c) of the Constitution provides:

"Right to Safe Schools. All students and staff of primary, elementary, junior high and senior high schools have an inalienable right to attend campuses which are safe, secure and peaceful."

This constitutional provision was examined by the court in *Clausing* v. *San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1236-1238:

"Under article I, section 26, of the California Constitution, all provisions of the state Constitution 'are mandatory and prohibitory, unless by express words they are declared to be otherwise.' Unquestionably, section 28, subdivision (c), is mandatory. Thus, all agencies of government are required to comply with it, and are prohibited from taking official actions which violate it or contravene its provisions. [Citations.]

"However, it is an entirely different matter to conclude that section 28, subdivision (c), is self-executing in the sense that it establishes an affirmative duty to act on the part of school districts, provides remedies for its violation, or creates a private cause of action for damages.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"As stated in the recent opinion of the Court of Appeal, Third Appellate District, in *Leger* v. *Stockton Unified School Dist.*, *supra*, 202 Cal.App.3d 1448, with which we are in agreement, 'section 28(c) declares a general right without specifying any rules for its enforcement. *It imposes no express duty on anyone to make schools safe*. It is wholly devoid of guidelines, mechanisms, or procedures from which a damages remedy could be inferred. Rather, "'it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.'" [Citation.]' (*Id.*, at p. 1455, fn. omitted.) *There is nothing in the legislative history of section 28, subdivision (c), to suggest that it was intended to create a civil action for*

*damages or an affirmative duty to insure that schools are free from all risk of crime and violence.* The right proclaimed in section 28, subdivision (c), although inalienable and mandatory, simply establishes the parameters of the principle enunciated; the specific means by which it is to be achieved for the people of California are left to the Legislature.

"Thus, we conclude that section 28, subdivision (c), is not self-executing, in the sense that it does not provide an independent basis for a private right of action for damages. *Neither does it impose an express affirmative duty on any government agency to guarantee the safety of schools.* [Citations.]" (Fns. omitted; italics added.)

Accordingly, this constitutional provision does not mandate disclosure of information by school officials in the described circumstances.

We have also examined the general provisions of the Education Code (see, e.g., §§ 44807, 44808) and find nothing therein that would require a school district to disclose information it has received from law enforcement officials or anyone else with regard to the presence of sex offenders in its community. In a long line of cases, the courts have found no mandatory duty on the part of school districts to take the types of steps necessary to insure "the physical safety of their students" as is contemplated here. (See *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747; *Wolfe* v. *Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 129-137; *Skinner* v. *Vacaville Unified School District* (1995) 37 Cal.App.4th 31, 37-43; *Clausing* v. *San Francisco Unified School Dist.*, *supra*, 221 Cal.App.3d at 1238-1241; *Leger* v. *Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1454-1463; *Tirpak* v. *Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639, 642-644; *Searcy* v. *Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 798-805; *Keech* v. *Berkeley Unified School Dist.* (1984) 162 Cal.App.3d 464, 468-469; *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 499-500; *Wright* v. *Arcadia School District* (1964) 230 Cal.App.2d 272, 278.)

We conclude in answer to the first question that a school district does not have a mandatory duty to disclose information received from a law enforcement official concerning the presence of a sex offender in its community. It may do so, however, in the manner and to the extent authorized by the law enforcement agency, and if it does so in good faith, it is immune from civil liability.

2.      **Duty To Disclose Information Received From Parents or Employees**

The second question presented is whether a school district has a duty to

disclose information received from a parent or employee regarding the presence of a sex offender in its community. We conclude that there is no mandatory duty but the district may disclose the information.

The reasoning with respect to question one is equally applicable here. No constitutional provision or statute mandates the disclosure of the subject information by a school district. Accordingly, whether the school district elects to disclose information concerning the presence of a sex offender received from a parent or employee lies within the sound discretion of school officials. The law contemplates that school officials will cooperate with law enforcement agencies in disseminating relevant information to protect public safety, especially the safety of the school's students.

We conclude in answer to the second question that a school district does not have a mandatory duty but may disclose information received from a parent or employee concerning the presence of a sex offender in its community. However, a school district will have civil immunity only if the information being disclosed was obtained from a law enforcement agency. (§ 290, subd. (p)(2).)

3.      **Possible Duty To Review CD-ROM Information on Sex Offenders**

As noted at the outset, section 290.4 requires the Department to maintain a continuing compilation of sex offender information on a CD-ROM or other electronic medium that it distributes to sheriffs' offices and to police departments of cities with a population of more than 200,000. We are asked whether a school district is under a duty to review these CD-ROMs when it has notice of the residence of a sex offender. We conclude that there is no mandatory duty but a school district may do so.

Our analysis of the first question is equally applicable to this question as well. Section 290.4 does not impose a legal duty upon school districts to examine CD-ROM information. The CD-ROM compilations are to "be used only for law enforcement purposes and the public safety purposes specified in [section 290.4] and Section 290" and "[a] person is authorized to use the information disclosed pursuant to this section only to protect a person at risk." (§ 290.4, subds. (c), (e)(1).)

We conclude that a school district does not have a mandatory duty but may inspect the information compiled on the Department's CD-ROMs to insure the safety of its students. The law contemplates that school officials will work with law enforcement agencies in protecting the public, particularly the safety of their students.

### 4. Disclosure of Information on Sex Offenders Received From Law Enforcement Officials

The fourth question presented is whether a school district may disclose information it has received from law enforcement officials concerning the presence of a registered sex offender in its community. We conclude that a school district may do so.

Law enforcement agencies may, pursuant to section 290, subdivision (m), disclose specified facts about serious sex offenders when the agency has determined that a child or other person may be at risk from the sex offender, if the agency finds the information is relevant and necessary to protect the public. When a law enforcement agency makes such a disclosure to a school or school district, it may authorize the school or school district receiving the information to disclose the information to additional persons. The agency is required to determine whether further disclosure by the school or school district meets the requirements of section 290, subdivision (m)(1) [reasonable suspicion that the information is needed to protect a person at risk]. The law enforcement agency is then required to identify the appropriate scope of further disclosure. (§ 290, subd. (m)(2).) The school or school district may disclose the information provided by the law enforcement agency in the manner and to the extent authorized by the agency. (§ 290, subd. (m)(3).)

When a law enforcement agency has made a disclosure about a high-risk sex offender to a school or school district, the school or school district may disclose that information to others in the manner and to the extent authorized by the law enforcement agency. (§ 290, subd. (n)(4).)

Any public or private educational institution, or employee thereof, which in good faith disseminates information provided by a law enforcement agency or employee of the agency, when the information provided is disseminated as authorized by the law enforcement agency, is immune from civil liability. (§ 290, subd. (p)(2).)

We conclude that a school district may disclose information it has received from law enforcement officials concerning the presence of a registered sex offender in its community to protect students at risk if the dissemination is made in the manner and to the extent authorized by the law enforcement agency.

### 5. Improper Disclosure of Information

The final question presented is whether a school official may be subject to sanctions when information relating to a sex offender is improperly used or improperly disclosed by him or her. We conclude that such official may be subject to sanctions.

Subdivision (q) of section 290 provides:

"Any person who uses information disclosed pursuant to this section to commit a felony shall be punished, in addition and consecutive to any other punishment, by a five-year term of imprisonment in the state prison. Any person who uses information disclosed pursuant to this section to commit a misdemeanor shall be subject to, in addition to any other penalty or fine imposed, a fine of not less than five hundred dollars ($500) and not more than one thousand dollars ($1,000)."

Section 290.4 provides in relevant part:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b)(1) Any person who uses information disclosed pursuant to this section to commit a felony shall be punished, in addition and consecutive to, any other punishment, by a five-year term of imprisonment in the state prison.

"(2) Any person who, without authorization, uses information disclosed pursuant to this section to commit a misdemeanor shall be subject to, in addition to any other penalty or fine imposed, a fine of not less than five hundred dollars ($500) and not more that one thousand dollars ($1,000).

"(c) The record of the compilation of offender information on each CD-ROM or other electronic medium distributed pursuant to this section shall be used only for law enforcement purposes and the public safety purposes specified in this section and Section 290. This record shall not be distributed or removed from the custody of the law enforcement agency that is authorized to retain it. Information obtained from this record shall be disclosed to a member of the public only as provided in this section or Section 290, or any other statute expressly authorizing it.

"Any person who copies, distributes, discloses, or receives this record or information from it, except as authorized by law, is guilty of a misdemeanor, punishable by; imprisonment in a county jail not to exceed six months or by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine. This subdivision shall not apply to a law enforcement officer who makes a copy as part of his or her official duties in the course of a criminal investigation, court case, or as otherwise authorized by subdivision (n) of Section 290. This subdivision shall not prohibit copying

information by handwriting.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . .

"(e)(1) A person is authorized to use information disclosed pursuant to this section only to protect a person at risk.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . .

"(3)(A) Any use of information disclosed pursuant to this section for purposes of other than those provided by paragraph (1) of subdivision (e) or in violation of paragraph (2) of subdivision (e) shall make the user liable for the actual damages, and any amount that may be determined by a jury or a court sitting without a jury, not exceeding three times the amount of actual damage, and not less than two hundred fifty dollars ($250), and attorney's fees, exemplary damages, or a civil penalty not exceeding twenty-five thousand dollars ($25,000).

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . ."

Accordingly, we conclude in answer to the fifth question that a school official may be subject to sanctions when information relating to a sex offender is improperly used or improperly disclosed by him or her. However, when information disclosed by a law enforcement agency to the school official is disclosed to third parties in the manner and to the extent authorized by the law enforcement agency, the school official is immune from civil liability. (§ 290, subd. (p)(2).)

* * * * *