[No. F061532. Fifth Dist. Feb. 28, 2012.]

MARIA ESTHER REY et al., Plaintiffs and Appellants, v.
MADERA UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

## Counsel

Gibson, Dunn & Crutcher, George H. Brown, Matthew S. Kahn, Julian W. Poon, Blaine H. Evanson, Gilbert Lee and Greta Bradlee for Plaintiffs and Appellants.

Atkinson, Andelson, Loya, Ruud & Romo, William M. Woolman, David A. Soldani and Jennifer D. Cantrell for Defendants and Respondents Madera Unified School District and Madera Unified Governing Board of Trustees.

Mennemeier, Glassman & Stroud, Kenneth C. Mennemeier, Margaret Carew Toledo and Stephen Lau for Defendant and Respondent Madera County Board of Education.

Douglas W. Nelson, County Counsel, for Defendant and Respondent Rebecca Martinez.

## Opinion

**LEVY, Acting P. J.**—In August 2008, appellants, Maria Esther Rey, Jesse Lopez, and Carlos Uranga, filed a complaint for violation of the California Voting Rights Act of 2001 (CVRA; Elec. Code, § 14025 et seq.) against respondents, Madera Unified School District, Madera Unified Governing Board of Trustees (collectively District), Madera County Board of Education in its capacity as the county committee on school district organization (County Committee), and Rebecca Martinez in her official capacity as the Madera County Clerk-Recorder (County Clerk). Appellants alleged that the

District's "at-large" method of electing members of the District's governing board caused dilution of the Latino vote.

Appellants also applied for a preliminary injunction to enjoin the District's November 4, 2008, election. Respondents did not oppose appellants' preliminary injunction application. Moreover, the District immediately initiated the process for changing its method of election.

On October 14, 2008, the trial court issued a preliminary injunction enjoining the County Clerk from certifying the results of the November 4, 2008, election. The trial court found that appellants were the prevailing parties and therefore were entitled to attorney fees and costs under the CVRA. At issue was the amount of the fee award.

The County Committee took the position that it had not violated any duties under the CVRA and therefore was not liable for appellants' attorney fees and costs. The trial court agreed and granted the County Committee's motion for summary judgment.

Although appellants requested approximately $1.7 million in attorney fees, the trial court awarded them $162,500 in fees to be paid by the District. In making this award, the trial court excluded the fees incurred in litigating against the County Committee.

On appeal, appellants challenge the summary judgment and the amount of the fees awarded. According to appellants, the County Committee should be liable under the CVRA because it had the power to initiate a change in the method of voting within the District. Appellants further argue that the trial court abused its discretion in awarding less than 10 percent of the requested fees.

As discussed below, the trial court did not err in granting summary judgment and did not abuse its discretion in reducing the fee award. Therefore, the judgment will be affirmed.

## BACKGROUND

At-large voting refers to the system where voters of an entire jurisdiction elect candidates to each open seat, not just the seats in a particular district. It has long been recognized that such at-large voting schemes may minimize or cancel out the voting strength of a protected class, i.e., a class of voters who are members of a race, color or language minority group. (*Thornburg v. Gingles* (1986) 478 U.S. 30, 47 [92 L.Ed.2d 25, 106 S.Ct. 2752]; *Sanchez v. City of Modesto* (2006) 145 Cal.App.4th 660, 669 [51 Cal.Rptr.3d 821]

(*Sanchez*).) To protect against a voting system that impairs the minority voters' opportunity to participate in the political process, both federal and California law create liability for vote dilution. (*Sanchez, supra,* 145 Cal.App.4th at p. 667.)

When at-large voting dilutes the vote of a protected class in California, the CVRA provides a private right of action. (*Sanchez, supra,* 145 Cal.App.4th at p. 667.) To prove a CVRA violation, the plaintiffs must show that the voting was racially polarized. However, they do not need to either show that members of a protected class live in a geographically compact area or demonstrate a discriminatory intent on the part of voters or officials. (145 Cal.App.4th at p. 667.)

The District, one of nine school districts in Madera County, was established in 1964. At that time, the County Committee's predecessor, an independent county committee on school district organization, submitted a proposal for formation of the District to the State Board of Education for review. This proposal included a provision that "the governing board members of that unified district would consist of seven members elected at-large." The State Board of Education approved the proposal. Thereafter, the voters approved the formation of the District.

In March 2008, appellants' counsel, Lawyers' Committee for Civil Rights (LCCR), sent a letter to the District's superintendent advising the District that its "at-large system may dilute the ability of Latino residents . . . to elect candidates of their choice to the school board" in violation of the CVRA. Appellants' counsel urged the District to voluntarily change its election system from at large to district based. The District responded that LCCR's letter did not explain how the District's at-large election process dilutes the Latino vote or otherwise violates the CVRA. LCCR then sent a followup letter to the District dated June 11, 2008, stating that they believed that the District was in violation of the CVRA due to racially polarized voting and requested the District to respond regarding a voluntary change to the current at-large system no later than June 30, 2008. The District did not respond.

On August 21, 2008, appellants filed the underlying complaint alleging that the at-large voting method violated the CVRA. Appellants also sought a preliminary injunction to block the November 4, 2008, election and requested an order requiring respondents to pay appellants' attorney fees and costs as mandated by the CVRA.

The District and the County Committee each filed a "nonopposition" to appellants' motion for a preliminary injunction. The District explained that, although it was too late to modify the November 4, 2008, election, the

District was "even now taking steps (of its own volition) to transition from an at-large election process to a trustee area election process" and thus, further litigation and judicial intervention were unnecessary. The County Committee explained that it had no involvement in the election and thus did not have a direct interest in whether the election proceeded as scheduled. The County Clerk responded that she had no control over whether the election was conducted by district or at large and that it was already too late for her to stop the District election without putting the entire election in peril.

On October 14, 2008, the trial court granted appellants' application and preliminarily enjoined the County Clerk from certifying the results of the scheduled November 4, 2008, election. The court noted that none of the respondents had opposed appellants' application.

In early December 2008, the parties stipulated to a stay of the matter pending further order of the court, except that appellants could move for attorney fees and the County Committee could renotice its demurrer to the complaint. This stipulation noted that on November 5, 2008, the District's board approved a specific plan for converting to trustee-area elections. Further, on November 12, 2008, the County Committee, acting pursuant to Education Code section 5019, approved the District's proposal to establish trustee areas and to convert the system of electing board trustees to a trustee-area electoral system. The trial court accepted and approved the stipulation and it became the order of the court on December 9, 2008.

Thereafter, appellants filed their initial fee motion seeking over $1 million in attorney fees. The County Committee filed an amended demurrer arguing that the County Committee could not be held liable because the CVRA creates no actionable duties for a county committee.

Following a September 2009 hearing, the trial court ruled on both the demurrer and the fee motion. The court found the appellants were entitled to attorney fees as prevailing parties, but left the amount of the award to be determined later. Nevertheless, at the hearing, the court characterized the amount of the fee request as "patently unreasonable." The court also overruled the County Committee's demurrer. However, the court concluded that the County Clerk was not liable for attorney fees because she had no discretion to cause or prevent violations of the CVRA.

In January 2010, the County Committee moved for summary judgment arguing that it had not violated any duties under the CVRA and had legislative immunity. In response, appellants moved to voluntarily dismiss their case conditioned on the court retaining jurisdiction to award fees and costs. The County Committee opposed appellants' dismissal motion arguing

that if the motion were granted it could be held liable for the payment of fees and costs without being found liable under the CVRA. The court denied appellants' dismissal motion.

In August 2010, the court granted the County Committee's summary judgment motion and awarded fees and costs to appellants. Appellants had requested approximately $1.7 million in fees and $105,000 in costs. However, the court declined to award appellants any fees incurred in the dispute between appellants and the County Committee. The court further found the attorneys' normal billing rates of $295 to $760 per hour to be excessive and instead awarded what it found to be a reasonable rate for the Central Valley of $325 per hour. The court concluded that the number of attorneys employed before and during the preliminary injunction hearing resulted in significant duplication of work and found the reasonable number of hours to be 500, representing 12 and one-half weeks of a full-time attorney. Multiplying 500 hours by $325 per hour, the court awarded appellants $162,500 against the District, finding it to be "fair and reasonable to all parties considering all of the factors considered by the court."

Thereafter, the court ordered the District to pay appellants $105,320.80 in litigation expenses, denied appellants' request for attorney fees and expenses from the County Clerk, and dismissed the complaint against the District and the County Clerk as moot.

## DISCUSSION

1. *The trial court properly granted summary judgment to the County Committee.*

 a. *Standard of review*

On appeal from the trial court's grant of a summary judgment motion, this court takes the facts from the record that was before the trial court and reviews the trial court's decision de novo. (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206 [74 Cal.Rptr.3d 570, 180 P.3d 321].) We liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts in favor of that party. (*Ibid.*)

 b. *The role of the County Committee.*

Each county has a county committee on school district organization. (Ed. Code, § 4000.) County committees are agencies of the state assigned a part in school district reorganization. (*Tinsley v. Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871, 908 [154 Cal.Rptr. 591].) To carry out this role,

county committees have the power to establish trustee areas, rearrange the boundaries of trustee areas, abolish trustee areas, increase or decrease the number of members on the governing board, or adopt one of the specified methods of electing governing board members. (Ed. Code, § 5019, subd. (a).) These election methods include a trustee-area system. (Ed. Code, § 5030, subd. (b).)

A proposal to make such changes may be initiated by the county committee, made to the county committee by a petition signed by qualified registered voters residing in the district or made by resolution of the governing board. (Ed. Code, § 5019, subd. (c).) When the proposal is made, the county committee must call and conduct at least one hearing in the district on the matter. At the conclusion of the hearing, the county committee must approve or disapprove the proposal. (*Ibid.*) By petition, signed by a specified minimum number, the district's registered voters may request an election on a proposal to adopt an alternative method of electing governing board members. (Ed. Code, § 5020, subd. (c).)

As discussed above, in 1964 the County Committee proposed that the District be formed and that this issue be presented to the voters. Included in this proposal was a provision stating that the governing board would be elected at large. This proposal was approved first by the State Board of Education and then by the voters. Between then and 2008 when it approved the change to a trustee-area election method, the County Committee had no involvement in District elections.

### c. *The County Committee did not violate the CVRA.*

Elections Code section 14027 sets forth the prohibited government conduct under the CVRA. That section provides: "An at-large method of election may not be imposed or applied in a manner that impairs the ability of a protected class to elect candidates of its choice or its ability to influence the outcome of an election, as a result of the dilution or the abridgment of the rights of voters who are members of a protected class . . . ."

The trial court concluded that the County Committee could not "be found to have 'imposed' or 'applied' a method of voting in violation of the CVRA" and thus was entitled to judgment as a matter of law. The court noted that, prior to the filing of the action, the County Committee did not receive a request from anyone to review and modify the method of voting in the District. Although a copy of the letter written by appellants' counsel to the District was forwarded to the Madera County Superintendent of Schools, the court found that that event was not equivalent to appellants having made a direct request for relief to the County Committee. The court further concluded

that, as a matter of statutory construction, the CVRA does not create an affirmative duty for the County Committee "to review the voting methods of the various school districts within the County, make itself aware of the changing demographics within each school district, and to pro-actively initiate proposals for change pursuant to section 5019(c)(1) of the Education Code."

Appellants contend that, because the CVRA is broadly aimed at stopping election methods that result in vote dilution, liability under it is not limited to those who "impose" or "apply" an illegal method themselves, but rather includes those who fail to ensure that such a method "not be imposed or applied." According to appellants, a statute aimed at stopping ongoing vote dilution must be read to require those who can stop it, such as the County Committee, to do so.

In construing Elections Code section 14027, we begin with its plain language, affording the words their ordinary and usual meaning. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251 [85 Cal.Rptr.3d 466, 195 P.3d 1049].) The words the Legislature chose to enact are the most reliable indicator of its intent. (*Ibid.*) Further, we will apply common sense to the language at issue and interpret the statute to make it workable and reasonable. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1122 [29 Cal.Rptr.3d 262, 112 P.3d 647].)

As noted by appellants, Elections Code section 14027 does not name specific actors and is written in the passive voice. By providing that an "at-large method of election may not be imposed or applied" (*ibid.*), the statute focuses on an event, i.e., the dilution of minority voting rights. "It is whether something happened—not how or why it happened—that matters." (*Dean v. United States* (2009) 556 U.S. 568 [173 L.Ed.2d 785, 129 S.Ct. 1849, 1853].) Discriminatory intent is not required. (Elec. Code, § 14028, subd. (d).)

Nevertheless, the Legislature's use of the phrase "imposed or applied" indicates that liability for violating Elections Code section 14027 is premised on the party having taken some sort of affirmative action with respect to the election. The ordinary meaning of "apply" is "bring into action" or "put into effect." (Webster's 3d New Internat. Dict. (1986) p. 105.) In this context "impose" means "to bring into being." (*Id.* at p. 1136.)

Here, the County Committee has never had any role in ordering, calling, conducting or otherwise carrying out the District's elections. Governing board member elections for the District must be held biennially. (Ed. Code, § 5000.) The duty to order and call such elections rests with the county superintendent of schools and the District's governing board. (Ed. Code,

§§ 5302, subd. (a), 5304, subd. (a).) Thus, it is those actors who can be said to have "applied" the voting method.

The County Committee's only involvement with District elections occurred in 1964 when it proposed that the District be formed with an at-large method of election and that the issue go to the voters. The CVRA was enacted in 2002. There is no evidence that in 1964 the at-large election method resulted in vote dilution. Thus, even if the CVRA were to be applied retroactively, the County Committee did not actively "impose" an at-large election method that violated Elections Code section 14027.

Appellants contend that, because the County Committee had the statutory power to initiate a process to change the voting method within the District, it had the duty to do so and violated Elections Code section 14027 when it did not. However, as discussed above, the language used in Elections Code section 14027 indicates that liability is based on active involvement with the election. As noted by the trial court, if the Legislature had intended Elections Code section 14027 to require county committees to review voting methods and proactively initiate proposals for change under Education Code section 5019, it could have easily created such an affirmative, mandatory duty.

■ Moreover, courts have not interpreted statutes setting forth prohibitions on certain conduct, as Elections Code section 14027 does, as creating mandatory duties to perform some act. (*Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1240 [271 Cal.Rptr. 72] (*Clausing*).) Before a statute is deemed to impose a mandatory duty on a public official, it must affirmatively impose the duty and provide implementing guidelines. (*O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 510 [44 Cal.Rptr.3d 531].)

Appellants argue that the above rule is inapplicable here because those cases concern government tort liability pursuant to Government Code section 815.6 and thus apply only to suits for damages, not fees. Nevertheless, the rationale behind not imposing mandatory duties based solely on a prohibitory statute applies to any liability. As explained by the court in *Clausing*, the potential ramifications to society and the legal system, in terms of exposure to civil liability, would be great and enormously costly if any and all statutes setting forth prohibitions on certain conduct were interpreted to transform them into mandatory injunctions on individuals or entities requiring them to take affirmative action to protect other members of the public from the kinds of harm that the statutes seek to prevent through prohibition. (*Clausing, supra,* 221 Cal.App.3d at p. 1240.) As noted above, the Legislature could easily have created the mandatory duties appellants seek to impose on the County Committee under the CVRA.

Appellants further assert that the trial court erred in granting summary judgment because there is a triable issue of fact as to whether the County Committee was put on notice of appellants' demand for a change in the voting method before the underlying action was filed. According to appellants, the County Committee violated the CVRA by not acting on the prelitigation demand letters sent to the District when one of those letters was forwarded to Dr. Sally Frazier, Madera County Superintendent of Schools. Since Frazier also served as the executive secretary for the County Committee, the letter was kept in the County Committee's files.

However, it is undisputed that the prelitigation letters sent by appellants' counsel were directed to the District and made demands on the District. No demands were made on the County Committee. The County Committee was not even mentioned. Thus, the letter cannot reasonably be viewed as a request that the County Committee take action. Further, the fact that the letter making demands on the District was placed in a County Committee file after being forwarded to the county superintendent of schools, cannot be reasonably viewed as placing the County Committee on notice that appellants were demanding that it take action.

■ In sum, the County Committee did not impose or apply the at-large voting method and had no affirmative duty to ensure that the at-large voting method did not result in vote dilution. Further, the County Committee was not placed on notice of appellants' demand that the at-large voting method be eliminated. Thus, the County Committee did not violate the CVRA. Accordingly, the trial court properly granted summary judgment in the County Committee's favor.

2. *The County Committee is not liable for attorney fees.*

Elections Code section 14030 provides that, in any action to enforce the CVRA, "the court shall allow the prevailing plaintiff party . . . a reasonable attorney's fee consistent with the standards established in Serrano v. Priest (1977) 20 Cal.3d 25, 48–49 [141 Cal.Rptr. 315, 569 P.2d 1303], and litigation expenses . . . ."

The trial court ruled that, because the County Committee did not violate the CVRA, it was not liable for attorney fees and costs.[1] The court further found that appellants were barred from reimbursement of the fees they incurred in litigating the issue of the County Committee's liability.

---

[1] The trial court had earlier ruled that the County Clerk was not liable for attorney fees pursuant to Elections Code section 14030 because the law provided her office with no discretion to change the voting method. Appellants challenged this ruling for the first time in their reply brief. Accordingly, the issue will not be considered. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 [67 Cal.Rptr.2d 350].)

Appellants contend that they are the prevailing parties and therefore are entitled to all of their fees to be paid by both the District and the County Committee. According to appellants, the court incorrectly decreased the fee award based on its finding that the County Committee was not ultimately liable for the CVRA violation.

It is undisputed that appellants accomplished their litigation objectives. The County Clerk was enjoined from certifying the results of the November 2008 at-large election and the District changed to a trustee-area election process. As noted by the trial court, appellants had achieved their substantive objective in this action as of May 19, 2009, when an election was conducted in which the voters elected District trustees in a trustee-area election. Having realized their litigation objectives, appellants are prevailing parties and therefore are entitled to reasonable attorney fees under Elections Code section 14030. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 622 [71 Cal.Rptr.2d 830, 951 P.2d 399].)

■ However, labeling appellants "prevailing parties" does not answer the question of which parties to the lawsuit can be held responsible for appellants' attorney fees. Unlike Code of Civil Procedure section 1021.5,[2] the private attorney general fee statute, Elections Code section 14030 does not specify that fees may be awarded "against one or more opposing parties." Rather, Elections Code section 14030 simply provides that the prevailing plaintiff party shall be allowed reasonable attorney fees. Nevertheless, awarding fees to the "prevailing plaintiff party" implies that the fees are to be awarded against a party the plaintiff prevailed against. Logically, this would be the party or parties that "imposed or applied" the at-large election method that was the subject of the litigation. It would make no sense to hold parties liable for attorney fees when those parties were not responsible for imposing or applying the unfair election method. Such liability would not further the purpose of the CVRA.

■ In the context of Code of Civil Procedure section 1021.5, the party liable for attorney fees has generally been the person or agency that is responsible for initiating and maintaining actions or policies that are deemed harmful to the public interest and that gave rise to the litigation. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1176–1177 [39 Cal.Rptr.3d 788, 129 P.3d 1] (*Connerly*).) In other words, " '[l]iability on the merits and responsibility for fees go hand in hand . . . .' " (*Nestande v. Watson* (2003) 111 Cal.App.4th 232, 241 [4 Cal.Rptr.3d 18].) Both Code of Civil Procedure section 1021.5 and Elections Code section 14030 award fees in actions that

---

[2] Code of Civil Procedure section 1021.5 provides, in part, that "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest . . . ."

result in the enforcement of an important right. Accordingly, this standard should be equally applicable to both fee statutes. Since the County Committee was not responsible for the at-large election method, the trial court properly found that it was not liable for attorney fees.

Appellants cite various cases for the proposition that a defendant is liable for attorney fees even if found to not be liable on the merits of the action. As appellants point out, the California Supreme Court has held that "[t]he critical fact is the impact of the action, not the manner of its resolution." (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685 [186 Cal.Rptr. 589, 652 P.2d 437].) However, this analysis pertains to what constitutes a "successful party" under Code of Civil Procedure section 1021.5. Thus, if the impact of the action has been "the 'enforcement of an important right affecting the public interest' and a consequent conferral of a 'significant benefit on the general public or a large class of persons' " a fee award is not barred because the case was won on a preliminary issue or was settled before trial. (*Folsom, supra*, at p. 685, fn. omitted.) Thus, there need not be a " 'favorable final judgment.' " (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [21 Cal.Rptr.3d 331, 101 P.3d 140].) Nevertheless, the party liable for the attorney fee award must have been an opposing party, i.e., responsible for initiating and maintaining the actions or policies that gave rise to the litigation. (*Connerly, supra*, 37 Cal.4th at pp. 1176–1177.)

Similarly, appellants' reliance on *Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810 [93 Cal.Rptr.2d 193] (*Blasius*) and *Bolsa Chica Land Trust v. Superior Court* (1999) 71 Cal.App.4th 493 [83 Cal.Rptr.2d 850] (*Bolsa Chica*), is misplaced. In *Connerly*, the California Supreme Court examined several cases, including *Blasius* and *Bolsa Chica*, and concluded that those found liable for Code of Civil Procedure section 1021.5 fees "were either real parties in interest that had a direct interest in the litigation, the furtherance of which was generally at least partly responsible for the policy or practice that gave rise to the litigation, or were codefendants with a direct interest intertwined with that of the principal defendant." (*Connerly, supra*, 37 Cal.4th at p. 1181.) The County Committee does not fall into either category.

For example, in *Blasius*, members of the public filed a lawsuit to maintain public access to a road on private property adjacent to a canal and to quiet title to the public easement after the property owner put up gates blocking such access. The Nevada Irrigation District (NID) had its own easement giving it access to the canal and was named as a defendant. NID joined the property owner in defending the access closure, presumably because it was opposed to sharing its easement with the public. The trial court entered a judgment granting an easement and awarded attorney fees under Code of Civil Procedure section 1021.5. Although the trial court did not grant affirmative

relief against NID, fees were awarded against both the landowners and NID. (*Connerly, supra*, 37 Cal.4th at p. 1181.)

NID challenged the fee award against it on the ground that the plaintiffs were not a successful party as to NID because the removal of the gate affected the landowners' property interest, not NID's. The court however disagreed. NID affirmatively and vigorously opposed the declaration of a public easement. (*Blasius, supra*, 78 Cal.App.4th at p. 836.) Moreover, the plaintiffs' success in quieting title to the public easement made it a prevailing party over NID, which had sought to have exclusive easement rights to the property in question. (*Id.* at p. 839.) Thus, unlike the County Committee, NID had a direct interest in the litigation that was intertwined with that of the principal defendant. (Cf. *Connerly, supra*, 37 Cal.4th at p. 1181.)

In *Bolsa Chica*, the California Coastal Commission approved a local coastal program that was thereafter found to be defective. The trial court awarded attorney fees under Code of Civil Procedure section 1021.5 against not only the coastal commission but also against two landowners, real parties in interest, whose developments were authorized by the plan and who participated in the litigation. In response to the landowners' contention that it was improper to award fees against them, the court noted that the landowners vigorously defended the commission's findings and in fact opposed the commission's efforts to have the matter remanded for new findings. (*Bolsa Chica, supra*, 71 Cal.App.4th at pp. 517–518.) Thus, contrary to the situation here, the landowners had a direct interest in the litigation that was at least partly responsible for the policy that gave rise to the litigation. (Cf. *Connerly, supra*, 37 Cal.4th at p. 1181.)

In sum, appellants did not prevail against the County Committee. The County Committee was not responsible for the at-large election method that appellants successfully challenged. Further, the County Committee did not oppose the granting of the preliminary injunction. Rather, the County Committee's only interest in the litigation was whether it could be held liable under the CVRA. On this issue, the County Committee prevailed against appellants. Accordingly, the trial court correctly concluded that the County Committee was not liable for attorney fees.

Appellants additionally assert that the trial court erred in decreasing their attorney fee award by subtracting the fees incurred in litigating the issue of the County Committee's liability under the CVRA. However, when appellants filed their first motion for attorney fees in June 2009, they had accomplished all of their litigation objectives. At that time, they had prevailed over the District and were entitled to an award of reasonable attorney fees against the District. Nevertheless, appellants continued to litigate against the

County Committee in an attempt to hold the County Committee liable for violating the CVRA. On this issue, the County Committee prevailed. Thus, appellants were successful on their claim against the District but unsuccessful on their claim against the County Committee.

■ Under these circumstances, the hours expended in pursuing the County Committee did not add to appellants' level of success. Thus, this work was not " ' "expended in pursuit of the ultimate result achieved." ' " (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 238 [118 Cal.Rptr.3d 352].) When, as here, a claimant achieves only limited success, a reduced fee award is appropriate. (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989 [104 Cal.Rptr.3d 710, 224 P.3d 41].) Accordingly, the trial court had discretion to reduce appellants' attorney fees by the hours that were spent on appellants' unsuccessful litigation against the County Committee.

3. *The trial court did not abuse its discretion in reducing the attorney fee award.*

As outlined above, appellants' initial fee motion filed in June 2009 sought over $1 million in attorney fees and costs. At the September 2009 hearing on this motion, the trial court characterized this amount as "patently unreasonable." The court thereafter ruled that appellants were entitled to attorney fees but left the amount of fees to be determined later.

In their updated fee motion filed in April 2010, appellants divided their fee request into three categories. For the work related to the merits of their case, appellants requested a total fee of approximately $737,500. This amount represented 727.1 hours at hourly rates varying from $295 to $760 with a blended multiplier of 2.02. Appellants stated that these hours were expended in "preparing the Complaint, researching the relevant legal issues, working with expert witnesses, preparing motion papers, preparing writ papers, and preparing for the hearing" on the preliminary injunction.

Appellants requested an additional approximately $287,000 for work done to recover their attorney fees and costs. This represented 732 hours "expended in preparing two fee motions, compiling all information necessary for those motions, engaging in fee-related discovery, and fighting off Defendants' numerous attempts to avoid fee liability."

Finally, appellants sought approximately $295,000 for their remaining non-fee-related work. This amount represented over 832 hours expended in litigating against the County Committee.

Thus, as of April 2010 appellants demanded a total fee of over $1.3 million. Appellants' final updated fee request for work done through May 2010 was for over $1.7 million representing a total of 3,028.8 hours of work.

The trial court was troubled by the number of hours claimed by appellants' attorneys and determined that, based on the final product, many of the hours were duplicative. The court concluded that the time reasonably attributable to achieving appellants' litigation goals against the District and in obtaining this attorney fee award was 500 hours. As discussed above, the court denied appellants any fees incurred in litigating against the County Committee. The court further found appellants' attorneys' billing rates were excessive for the Central Valley and, based on Central Valley rates, concluded that $325 per hour was reasonable for a total award of $162,500. The court declined to apply either a positive or a negative multiplier, stating that the ultimate award was "fair and reasonable to all parties considering all of the factors considered by the court."

a. *Calculation of fee award and standard of review.*

 In determining a reasonable attorney fee award under fee-shifting statutes, the trial court begins by calculating a lodestar figure based on the hours reasonably spent, multiplied by the prevailing hourly rate for private attorneys in the community conducting litigation of the same type. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133 [104 Cal.Rptr.2d 377, 17 P.3d 735] (*Ketchum*).) Once the lodestar is fixed, the court may increase or decrease that amount by applying a positive or negative "multiplier" to take other factors into account. (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 833 [112 Cal.Rptr.2d 284] (*Thayer*).) These factors include, but are not limited to, (1) the novelty and difficulty of the questions involved; (2) the skill displayed in presenting them; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; (4) the contingent nature of the fee award; and (5) the fact that an award against the state would ultimately fall upon the taxpayers. (*Serrano v. Priest, supra,* 20 Cal.3d at p. 49 (*Serrano III*).)

The determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 [95 Cal.Rptr.2d 198, 997 P.2d 511] (*PLCM Group*).) The experienced trial judge is the best judge of the value of professional services rendered in his or her court. (*Serrano III, supra,* 20 Cal.3d at p. 49.) Accordingly, the trial court's ruling will not be disturbed unless the appellate court is convinced that it is wrong. (*Ibid.*) In other words, the trial court's exercise of discretion will be reversed only if its decision "exceeded the bounds of reason," i.e., it was arbitrary, capricious, or patently absurd.

(*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 [243 Cal.Rptr. 902, 749 P.2d 339]; see *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 615–616 [115 Cal.Rptr.3d 762].)

> b. *The trial court did not abuse its discretion in reducing the hourly rate.*

■ Generally, in calculating the lodestar, "[t]he reasonable hourly rate is that prevailing in the community for similar work." (*PLCM Group, supra*, 22 Cal.4th at p. 1095.) However, in the "unusual circumstance" that local counsel is unavailable a trial court may consider out-of-town counsel's higher rates. (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 399 [33 Cal.Rptr.3d 644] (*Horsford*).) Nevertheless, the use of the higher rates for out-of-town counsel requires a sufficient showing that hiring local counsel was impracticable. (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1244 [66 Cal.Rptr.3d 680].) A plaintiff must at least make " 'a good-faith effort to find local counsel.' " (*Horsford, supra*, 132 Cal.App.4th at p. 399.)

Here, appellants hired out-of-town attorneys from a higher fee area, with certain of the attorneys charging over $700 per hour. The trial court concluded these rates were excessive for the Central Valley and instead calculated the fee award using a blended local rate of $325 per hour.

Appellants contend they demonstrated that they made a good faith effort to find local counsel but that hiring local counsel was impracticable. The evidence presented by appellants consisted of two declarations. The first was from one of appellants' attorneys stating that in his experience, private firms in central California are reluctant to represent racial and ethnic minority plaintiffs in challenges to at-large voting methods. The second was from a local attorney who has practiced law in the Central Valley for 29 years and has experience with voting rights cases. According to this attorney, private attorneys in central California are generally unwilling to take voting rights cases. The attorney also stated that if asked, she would not have felt able to accept this case and knew of no other local counsel who would have been willing or able to represent appellants.

In contrast, the District submitted declarations from two local attorneys. Both attorneys declared that they had the experience, skill and resources to accept such a case and would have taken this case if asked. Thus, the trial court was faced with conflicting evidence. Moreover, appellants' evidence was speculative and did not establish that appellants ever attempted to retain local counsel. Under these circumstances, the trial court did not abuse its discretion in applying local rates rather than counsels' out-of-town rates.

 c. *The trial court did not abuse its discretion in refusing to apply a multiplier.*

As discussed above, once the trial court has fixed the lodestar figure, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of factors. (*Thayer, supra*, 92 Cal.App.4th at p. 833.) As relevant here, these factors include, "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers . . . ." (*Serrano III, supra*, 20 Cal.3d at p. 49.)

Appellants argue the trial court erred in rejecting their request to apply "a modest 'multiplier' " of 1.08. According to appellants, they satisfied the factors articulated by the *Serrano III* court and therefore a fee enhancement was required.

 However, the trial court is not *required* to include a fee enhancement for exceptional skill, novelty of the questions involved, or other factors. Rather, applying a multiplier is discretionary. (*Ketchum, supra*, 24 Cal.4th at p. 1138.) Further, the party seeking the fee enhancement bears the burden of proof. (*Ibid.*) Moreover, contrary to appellants' contention, they did not necessarily satisfy all of the relevant *Serrano III* factors that would support a fee enhancement. Although the case was novel and, as noted by the trial court, the attorneys "were all of the highest quality," the merits of the case were established almost as soon as the case began. The complaint was filed in August 2008, the preliminary injunction, which was unopposed, was granted in October 2008, and the District proposed, and the County Committee approved, the conversion to trustee-area elections in November 2008. Accordingly, the attorneys were not precluded from other employment and it was established early on that they were eligible for a fee award.

Appellants further assert that the trial court did not engage in any analysis of the *Serrano III* factors as it was required to do. However, the record does not support appellants' position. The court stated it was considering the amount of the attorney fees to be awarded " 'consistent with the standards established in *Serrano v. Priest.*' " The court then explained that it had considered the novelty and difficulty of the questions involved, the skill displayed in presenting them, the extent to which the nature of the litigation precluded other employment, and the contingent nature of the fee award. Finally, the trial court considered the effect of the award on the taxpayers.

The court noted that, while there was no evidence that the District would get additional revenues from the taxpayers to pay the award, it was likely that any amount paid by the District would instead be cut from educational services that would otherwise be provided to the District's students.

In sum, the trial court considered the relevant *Serrano III* factors and determined that a multiplier was not warranted. No error occurred.

> d. *The trial court did not abuse its discretion in reducing the number of hours.*

In their final updated fee request, appellants requested compensation for 3,028.8 hours expended in litigating this case. On the merits appellants claimed: 195.45 hours for filing the complaint; 68.65 hours for other prelitigation planning; 353.45 hours on the preliminary injunction motion; and 109.55 hours identifying, retaining, and working with experts, for a total of 727.1 hours. Appellants also claimed 979.5 hours for establishing and defending their fees. These hours were spent on settlement negotiations, research, analyzing billing records, drafting the two fee motions, appearing at the hearings, and discovery. The remaining 1,322.2 hours claimed were spent litigating against the County Committee.

The trial court reduced the hours to 500. The court explained its reasoning as follows: "The court is troubled by the number of hours claimed by the attorneys for the plaintiffs. Again, the court has considered all of the evidence presented by the parties. However, the final product observed by the court would suggest to the court that many of the hours worked by the plaintiffs' attorneys on this case were duplicative of work performed by other plaintiffs' attorneys. Of course, it would be impossible for this court to discern, from the declarations and exhibits filed in this action, any precise billing entry which would be duplicative of another, but it seems unquestionable in this action that the number of attorneys employed prior to and during the hearing for the preliminary injunction resulted in significant duplication of work."

Appellants argue that they presented voluminous evidence detailing the reasonable and necessary fees incurred and that the trial court's blanket reduction of hours was an abuse of discretion. According to appellants, the trial court erred by failing to provide any explanation whatsoever as to how it arrived at the final number of hours it awarded.

An attorney fee award should include compensation for all hours *reasonably spent.* (*Ketchum, supra*, 24 Cal.4th at p. 1133.) "Reasonably spent" means " 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." (*Id.* at p. 1132.) A plaintiff is not automatically

entitled to all hours claimed in the fee request. Rather, the plaintiff must prove the hours sought were reasonable and necessary. (*El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, 1366 [65 Cal.Rptr.3d 524].)

Here, the court stated that it considered all the evidence presented by the parties regarding the number of hours claimed. It is the trial court's role to examine the evidence and we presume the trial court performed its duty. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1324 [81 Cal.Rptr.3d 866].) Where the trial court severely cuts the number of compensable hours in a fee award, we infer the court determined the request was inflated. (*Id.* at p. 1323.) The trial court is not required to issue a statement of decision. (*Ketchum, supra,* 24 Cal.4th at p. 1140.) Rather, " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Ibid.*)

As outlined above, appellants achieved their goal on the merits of the case within three months of filing the complaint. Shortly thereafter, they requested over $1 million in attorney fees generated by multiple lawyers. The trial court surmised, based on the final product and the number of attorneys employed, that many of the hours were duplicative and thus the hours were inflated. The record supports this conclusion. For example, appellants requested compensation for over 195 hours, logged by nine different attorneys, for preparing the complaint. Four of these attorneys logged time for drafting and revision of the complaint, legal and factual research, and coordinating and conferring with other attorneys. One attorney performed legal research and two attorneys performed work relating to the complaint. Further, compensation for over 353 hours was requested for preparing the preliminary injunction motion. Eleven different attorneys performed this work. These numbers suggest duplication and inefficiency.

The trial court noted that, based on the declarations and exhibits, it would be impossible for the court to discern any precise billing entry that was duplicative of another. However, this burden does not rest on the trial court. Rather, the burden was on appellants to prove that the hours requested were reasonable and to provide a sufficient and proper basis for making that determination. (*Christian Research Institute v. Alnor, supra,* 165 Cal.App.4th at p. 1320.)

Once they had achieved success on the merits of the case, appellants requested compensation for over 979 hours to collect their fees. Again, the trial court found this number inflated. The number of hours in and of itself supports this conclusion. Further, as discussed above, the trial court acted

within its discretion in denying appellants compensation for the hours spent litigating against the County Committee.

Here, it was the trial judge who was in the best position to assess the value of the professional services rendered in his court. Based on the record, we are not convinced that the trial court was wrong to reduce the number of hours to 500. This ruling did not exceed the bounds of reason. Accordingly, the trial court acted within its discretion in making the fee award.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondents.

Gomes, J., and Dawson, J., concurred.