Filed 8/27/24; Modified and Certified for Pub. 9/18/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SARAH ANOKE et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>TWITTER, INC., et al.,<br><br>     Defendants and Respondents. | A168675<br><br>(City and County of San Francisco Super. Ct. No. CPF23518034) |

     To discourage delays in arbitrations, Code of Civil Procedure section 1281.97[1] provides a remedy when a company's share of the initial arbitration fees "are not paid within 30 days" of the invoice. (§ 1281.97, subds. (a)(1), (b).) In an employment-related arbitration, counsel for appellant employees mistakenly paid initial fees that should have been paid by the employer, respondents Twitter, Inc., X Holdings I, Inc., X Holdings Corp., X Corp., and Elon Musk (collectively "X"). Upon receipt of that payment, the arbitration provider marked the invoice "[c]losed" and "[p]aid" in its online payment system. In response to the payment snafu, the arbitration provider refunded the mistaken payment to the employees and issued a new invoice to X, which X paid within 30 days. Appellants petitioned the superior court for an order compelling X to pay their arbitration-related attorney

---

     [1] Undesignated statutory references are to the Code of Civil Procedure.

1

fees and costs pursuant to section 1281.97, arguing that X's payment was untimely because it was not made within 30 days of the first invoice. (§ 1281.97, subds. (a)-(b).) The superior court denied the petition. We affirm.

## BACKGROUND

### A.

Appellants Sarah Anoke and other current or former employees (collectively "Anoke") initiated arbitration proceedings with Judicial Arbitration and Mediation Services ("the arbitrator") to resolve employment-related disputes with X. Anoke's employment contract with X provides for arbitration of such disputes.

On March 7, 2023, the arbitrator emailed an invoice for $27,200, X's share of the initial fees for the 15 individual arbitrations here, to all counsel. The invoice stated that "[p]ayment is due upon receipt." Anoke's counsel mistakenly paid the invoice the same day. As a result, when X's counsel accessed the arbitrator's online portal on March 8, the system listed the status of the invoice as "[c]losed" and indicated that $27,200 had been "[p]aid" on the invoice.

Anoke's counsel notified the arbitrator of the error on March 8, and the arbitrator issued a refund check on March 21. Anoke's counsel apparently did not notify X that it had paid the fees or requested a refund. Notwithstanding the refund, when the arbitrator emailed counsel for both parties near the end of March to schedule an initial administrative call, the arbitrator represented that " '[t]he initial filing fees . . . have now been paid.' "

On April 11, the arbitrator emailed counsel for both parties, stating that "[i]t appears [the] billing department may have nulled the original invoice" for the case-opening fees. The email included, as an attachment, a second invoice for X's share of the

2

case initiation fees, $27,200.  The new invoice, dated April 7, indicated that "[p]ayment is due upon receipt."  The arbitrator's online portal continued to list the earlier invoice as "[c]losed" and "[p]aid."

On May 5, X remitted payment on the April 7 invoice.

## B.

In the superior court, Anoke filed a motion to compel an arbitration in which X is liable for her reasonable attorney fees and costs, a remedy for untimely payment under section 1281.97, subdivision (b)(2).

After a hearing, the court denied relief.  The court reasoned that, because the arbitrator nullified the first invoice after Anoke's attorney mistakenly paid it, and X timely paid the second invoice, X met the statutory deadline.

## DISCUSSION

Anoke argues that X failed to timely pay the arbitration fees as required by section 1281.97.  We disagree.

Given that the facts are undisputed, we review de novo the trial court's interpretation and application of section 1281.97. (*See De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 749.) Our task in construing the statute is to effectuate the Legislature's intent, beginning with the statute's words and giving the text its ordinary meaning.  (*See Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 783.)

The purpose of section 1281.97 is "[t]o avoid delay" from nonpayment of the fees needed at the outset of an arbitration, encouraging efficient and prompt resolution of disputes subject to arbitration.  (*See* § 1281.97, subd. (a)(2); *see also* Stats. 2019, ch. 870, § 1(c).)  Our Legislature recognized that "[a] company's strategic non-payment of [arbitration] fees and costs severely prejudices the ability of employees or consumers to vindicate

3

their rights," particularly when the company refusing to pay the fees is the party who insisted on arbitration in the first place. (*See* Stats. 2019, ch. 870, § 1(d); *see also Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1073-1074 (*Williams*).)  By "provid[ing] employees and consumers remedies if a drafting party refuses to pay," the statute seeks "[t]o ensure that a drafting party cannot unilaterally prevent a party from adjudicating their claims" in arbitration.  (Assem. Com. on Jud., Analysis of Sen. Bill No. 707 (2019-2020 Reg. Sess.) as amended May 20, 2019, p. 8.)

Accordingly, section 1281.97 establishes a 30-day time frame for payment of the fees required to initiate an employment or consumer arbitration.  As the party that imposed the arbitration clause, the statute refers to X as the "drafting party." (§§ 1280, subd. (e), 1281.97, subd. (a)(1).)  If the fees "are not paid within 30 days after the due date the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration[.]"  (§ 1281.97, subd. (a)(1).)  When the drafting party is in default, the employee or consumer may (as applicable here) compel an arbitration in which the drafting party is liable for reasonable attorney fees and costs.  (§ 1281.97, subd. (b)(2).)[2]

Importantly, the "due date" that triggers the 30-day grace period is set by an invoice from the arbitration provider.  Once an employee or consumer initiates an arbitration, the arbitration provider must "immediately provide an invoice for any fees and costs required before the arbitration can proceed to all of the

---

[2] Like section 1281.97, which concerns payment of fees to *initiate* an arbitration, section 1281.98 contains an analogous framework for payment of arbitration fees necessary to *continue* an arbitration; because the analysis under these provisions is parallel, we rely on case law interpreting both provisions.  (*See, e.g., Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, 1077 (*Cvejic*); *Williams, supra*, 86 Cal.App.5th at pp. 1065-1066.)

4

parties to the arbitration." (§ 1281.97, subd. (a)(2).) "To avoid delay" the arbitration provider must issue the invoices "to the parties as due upon receipt," unless the agreement states otherwise. (*Ibid.*) In sum, a default occurs when the arbitration fees go unpaid for 31 days after "the due date" (§ 1281.97, subd. (a)(1)) set by an arbitration provider's "invoice." (§ 1281.97, subd. (a)(2).)

That never happened here. After the arbitrator issued the first invoice, properly marked due upon receipt, Anoke's counsel immediately paid the invoice in full. When the arbitrator issued a new invoice, also marked due upon receipt, X paid the fees within 30 days. Neither invoice was ever past due for 31 days, as the statute requires for a default.

Anoke makes several arguments. None has merit.

First, she argues that the statute requires payment of the fees, not the invoice. That's true, as far as it goes. But the invoice sets the "due date," and thus also the 30-day grace period that determines whether a payment is late. (§ 1281.97, subds. (a)(1)-(2).) Here, there were two invoices, two due dates, and two payments—and both payments were within the statutory grace period set by the relevant invoices.

This brings us to Anoke's second argument: she contends the arbitrator had no authority to issue a second invoice. By issuing a second invoice, she says, the arbitrator extended the grace period on the due date beyond 30 days. Arbitrators cannot cure a default by extending the statutory 30-day grace period. (*See Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319, 1324-1325, review granted June 12, 2024, S284498; *Cvejic*, *supra*, 92 Cal.App.5th at pp. 1075, 1078.)

Here, however, the arbitrator did not try to cure a default or extend a 30-day grace period. There was no missed payment. Anoke fails to accept responsibility for the fact that it was *her*

5

attorney who timely paid the first invoice.  The statute did not bar the arbitrator from accepting that payment.  At that point, as far as the statute goes, the arbitrator had nothing more to do.  The arbitration could proceed without delay, which it did.  The arbitrator marked the invoice "paid" and "closed," which it was.  When Anoke's counsel then demanded a refund, her counsel put the arbitrator back to square one.  The statute does not tell the arbitrator what to do when a timely payment is refunded.  The arbitrator made a rational decision to issue a new invoice "due upon receipt," which X paid within the statutory grace period.  (§ 1281.97, subds. (a)(1)-(2).)  The circumstances are unusual (and unlikely to be repeated, surely), but we cannot fault the arbitrator.  Even if it could have somehow reinstated the first invoice after it had been paid and closed, Anoke does not persuade us that the statute *required* it to do so.

Third, Anoke contends her attorney never "paid" the invoice within the meaning of the statute.  Only a payment by X would satisfy the statute, she says, because it was responsible for paying the fees.

In these unique circumstances, we conclude that Anoke's counsel "paid" the first invoice.  As Anoke acknowledges, the reasons for a late payment are irrelevant.  (*See Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 775-776; *Williams*, *supra*, 86 Cal.App.5th at p. 1074.)  In our view, the reasons for a timely payment are likewise irrelevant.  The statute employs passive voice for the critical language ("if the fees or costs . . . are not paid within 30 days").  (§ 1281.97, subd. (a)(1)).)  When the Legislature uses passive voice, it suggests the condition turns on whether the event occurs, not how or why it occurs.  (*See Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1233; *Dean v. United States* (2009) 556 U.S. 568, 572.)  Indeed, when the Legislature elects to use passive voice for some statutory requirements and active voice for others, that contrast

6

underscores the Legislature's intent that some actions must be personally taken by the actor while others need not be. (*See Capo for Better Representation v. Kelley* (2008) 158 Cal.App.4th 1455, 1462.)

Here, section 1281.97, subdivision (a)(1) uses passive voice to describe the condition ("if the fees or costs . . . are not paid") but active voice to describe the consequences ("the drafting party is in material breach . . . , is in default . . . , and waives its right to compel arbitration"). The switch in voices indicates that, if the fees are not paid—regardless of how or why—the drafting party bears the consequences. But for purposes of determining whether a breach has occurred, section 1281.97 turns on whether the fees were paid within 30 days of the invoice's due date—not how they were paid or why.

In fact, at oral argument, Anoke conceded that an employee might *choose* to pay the fees—to accelerate the arbitration process, for example—and that the drafting party would then be off the hook for the fees. In that case, she says the drafting party is responsible for paying the fees (according to the due date in the first invoice) only when the employee mistakenly paid the fees and obtained a refund. This undercuts Anoke's position that the statute assigns sole responsibility for paying the fees to the drafting party. It also would expose the process to gamesmanship where, for example, the employee delays obtaining the refund until the 30-day deadline has almost run.

Moreover, to adopt Anoke's position would require us to ignore the Legislature's scheme for setting, and putting parties on notice of, the statutory deadline. As explained, the statute ties the 30-day deadline to an invoice from the arbitrator. (§ 1281.97, subd. (a)(2).) The Legislature could have set a deadline based on some other fixed event, like the date the employee met the initial filing requirements. (*See ibid.*) By instead tying the 30-day deadline to an arbitrator's invoice, it leveraged the existing

7

business practice by which companies bill each other.  Here, a mistaken payment resulted in a second invoice, which is consistent with ordinary business billing practices.  We are not going to rewrite the statute to say that, in the event one invoice is mistakenly paid, a second invoice is improper.

We affirm the superior court's order.  Accordingly, we do not reach X's alternative arguments.

**DISPOSITION**

The order denying Anoke's motion to compel arbitration is affirmed.


BURNS, J.

WE CONCUR:


SIMONS, ACTING P.J.
CHOU, J.

*Anoke et al. v. Twitter et al. (A168675)*

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIRST APPELLATE DISTRICT**

**DIVISION FIVE**

| | |
|---|---|
| SARAH ANOKE et al., <br><br>      Plaintiffs and Appellants, <br><br> v. <br><br> TWITTER, INC., et al., <br><br>      Defendants and Respondents. | A168675 <br><br> (City and County of San Francisco Super. Ct. No. CPF23518034) <br><br> **ORDER CERTIFYING OPINION FOR PUBLICATION AND MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

The opinion in the above-entitled matter, filed on August 27, 2024, was not certified for publication in the Official Reports. On September 16, 2024, a request for publication was received from respondents pursuant to California Rules of Court, rule 8.1120(a). We accepted the request for publication for filing.

For good causing appearing, this court grants the publication request and orders the opinion (as modified below) certified for publication pursuant to California Rules of Court, rule 8.1105(b), (c).

The opinion filed on August 27, 2024, shall be MODIFIED as follows:

    1. In the last paragraph on page six, the fifth sentence is modified to read as follows: "When the Legislature uses

1

passive voice, it may suggest the condition turns on whether the event occurs, not how or why it occurs."

2. In the same paragraph, the sixth sentence, which begins at the bottom of page six and continues into page seven, is modified to read as follows: "Indeed, in some contexts when the Legislature elects to use passive voice for some statutory requirements and active voice for others, that contrast may reflect the Legislature's intent that some actions must be personally taken by the actor while others need not be."

3. On page seven, the parenthetical citation following the sentence modified in item 2 above is modified to read as follows: "(*See Capo for Better Representation v. Kelley* (2008) 158 Cal.App.4th 1455, 1462; *but see Cohen v. Superior Court* (2024) 102 Cal.App.5th 706, 722.)"

4. On page seven, in the second full paragraph, the second and third sentences are modified to read as follows: "In that case, she says the drafting party is responsible for paying the fees (according to the due date in the first invoice) only if the employee later obtains a refund. This contradicts Anoke's position that only a payment by the drafting party can satisfy the statute."

The modifications make no change to the judgment.

BURNS, J.

WE CONCUR:

SIMONS, ACTING P.J.
CHOU, J.

*Anoke et al. v. Twitter et al. (A168675)*

2

Superior Court of the City and County of San Francisco, No. CPF23518034, The Hon. Richard B. Ulmer, Jr.

Ethan Jacobs Law Corporation, Ethan Jacobs, for Plaintiffs and Appellants.

Morgan, Lewis & Bockius LLP, Eric Meckley and Michael E. Kenneally, for Defendants and Respondents.